532 F.2d 1377
 174 U.S.App.D.C. 302
 Edgar McCORD, T/A Mac's Cities Service, Petitioner,
v.
John F. CEPHAS, Deceased, Respondent.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Petitioner,
v.
Malinda CEPHAS, Respondent.
 Nos. 74-1948 and 74-1964.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Oct. 21, 1975.
Decided March 24, 1976.
 
 Robert B. Adams, for petitioner in No. 74-1948. Mark L. Schaffer, Washington, D.C., also entered an appearance for petitioner in No. 74-1948.
 Ronald E. Meisburg, Atty., U.S. Dept. of Labor, Washington, D.C., with whom George M. Lilly, Atty., U. S. Dept. of Labor, Washington, D.C., was on the brief for petitioner in No. 74-1964. Cornelius E. Donoghue, Jr., Atty., U.S. Dept. of Labor, Washington, D.C., also entered an appearance for petitioner in No. 74-1964.
 Aaron M. Levine, Washington, D.C., for respondents.
 
 
 1
 Before LEVENTHAL and MacKINNON, Circuit Judges, and McMILLAN,* United States District Judge for the Western District of North Carolina.
 
 
 2
 Opinion for the Court filed by District Judge McMILLAN.
 
 McMILLAN, District Judge:
 
 3
 Edgar McCord, employer, filed this petition seeking reversal of an August 16, 1974, decision of the Benefits Review Board of the United States Department of Labor in favor of the dependents of the deceased employee, John Cephas. Pursuant to Section 22 of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 922, which permits reopening of awards "because of a mistake in a determination of fact," the Administrative Law Judge had reversed a prior award in favor of Cephas' dependents. The Benefits Review Board ruling, under review here, vacated the Administrative Law Judge's decision and reinstated the original award.
 
 
 4
 We reverse the Benefits Review Board because its decision is based on an approach inconsistent with the Supreme Court's reading of the scope of § 22 in O'Keeffe v. Aerojet-General Shipyards, Inc., 404 U.S. 254, 92 S.Ct. 405, 30 L.Ed.2d 424 (1971) and Banks v. Chicago Grain Trimmers Assn., Inc., 390 U.S. 459, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1967), and remand for a determination of whether reopening in this case is desirable in order "to render justice under the act." H.Rep.No. 1244, 73d Cong., 2d Sess. 4 (1934); Banks v. Chicago Grain Trimmers Assn., Inc., 390 U.S. at 464, 88 S.Ct. at 1144, 20 L.Ed.2d at 36.
 
 
 5
 John Cephas had a regular $60 a week working job for Dunkey's trash removal service of Washington, D.C. Dunkey's trucks were regularly parked at McCord's Citgo gas station, at 2319 Benning Road, N.E. On December 28, 1968, John Cephas was seen working at McCord's gas station, selling gas, waiting on customers, and wearing a Citgo hat and shirt. While there, he was shot in the leg by a robber, resulting in a leg fracture, was hospitalized, and died on January 1, 1969, as a result of the wound.
 
 
 6
 Mrs. Cephas promptly filed claim against McCord for benefits under the applicable Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901, et seq. Whether Cephas' death arose out of and in the course of "employment" by McCord was of course one of the principal questions presented by the claim. On January 16, 1969, the Bureau of Employees' Compensation notified McCord of the claim. McCord, two days later, returned the notice with the written notation, "John Cephas has never been in our employment."
 
 
 7
 Four years passed.
 
 
 8
 During that four years, Mrs. Cephas pursued her claim, through administrative channels, and McCord remained aloof, refusing to appear or defend or supply information. On February 12 and February 13, 1969, he refused to cooperate with a Labor Department investigator, and refused to sign or complete forms controverting the claim. On March 2, 1971, he refused to appear for a conference, telling the claims examiner to "go ahead and do what you want." He apparently refused to attend or participate in any conference or hearing. On September 20, 1972, he disregarded a subpoena and failed to appear at a formal hearing. Details of other instances of disdain for the claim and the administrative process are alleged in the briefs.
 
 
 9
 On October 13, 1972, a Deputy Commissioner issued an award of death benefits to Cephas' widow, and sent a copy to McCord. He did not respond nor appeal within the thirty days allowed by Section 21 of the Act, 33 U.S.C. § 921.
 
 
 10
 Over three months later, McCord consulted a lawyer who on January 31, 1973, filed a petition for modification of the award on the grounds that the original decision that Cephas was in the employment of McCord was a mistake in a determination of fact. The Deputy Commissioner allowed a re-opening and referred the case to an Administrative Law Judge (successor after November 26, 1972, to the hearing functions of the deputy commissioner) for a second hearing.
 
 
 11
 McCord showed up, with counsel, for the second hearing, offered evidence, convinced the Administrative Law Judge that Cephas had not been in his employment, and obtained an order from the Administrative Law Judge reversing the prior award in favor of the dependents of Cephas. (The Administrative Law Judge found McCord's inattention to the proceedings to have been a "reprehensible flouting of governmental authority," and required him therefor to pay $750 to the claimant. He also certified his findings and conclusions to that effect to the District Court of the District of Columbia Circuit for summary proceedings for contempt. (App. 25.)
 
 
 12
 Mrs. Cephas appealed to the Benefits Review Board. On August 16, 1974, that Board vacated the Administrative Law Judge's decision on the merits and reinstated the original award in favor of the dependents of Cephas, upon the grounds that the Administrative Law Judge had no jurisdiction, after the thirty days prescribed in 33 U.S.C. § 921, to grant the employer's request for modification upon grounds of a mistake in a determination of fact, particularly a jurisdictional fact such as the existence of the employment relationship.
 
 
 13
 McCord, the employer, sought review in this court.
 
 
 14
 The appellant's right to review depends upon Section 22 of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 922, which provides:
 
 
 15
 § 922. Modification of awards.
 
 
 16
 "Upon his own initiative, or upon the application of any party in interest, on the ground of a change in conditions or because of a mistake in a determination of fact by the deputy commissioner, the deputy commissioner may, at any time prior to one year after the date of the last payment of compensation, whether or not a compensation order has been issued, or at any time prior to one year after the rejection of a claim, review a compensation case in accordance with the procedure prescribed in respect of claims in section 919 of this title, and in accordance with such section issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation. Such new order shall not affect any compensation previously paid, except that an award increasing the compensation rate may be made effective from the date of the injury, and if any part of the compensation due or to become due is unpaid, an award decreasing the compensation rate may be made effective from the date of the injury, and any payment made prior thereto in excess of such decreased rate shall be deducted from any unpaid compensation, in such manner and by such method as may be determined by the deputy commissioner with the approval of the Secretary."
 
 
 17
 The Benefits Review Board took the view that though § 22 authorizes modification, it does not authorize nullification of existing awards. They also, citing Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932), felt that a finding that the employment relationship exists is a "jurisdictional fact" which, if not appealed in thirty days under § 21, may not be reviewed under § 22. Therefore, they held that the Deputy Commissioner had no jurisdiction to re-open the case.
 
 
 18
 We think the Deputy Commissioner did in fact have jurisdiction to re-open.
 
 
 19
 In O'Keeffe v. Aerojet-General Shipyards, Inc., 404 U.S. 254, 92 S.Ct. 405, 30 L.Ed.2d 424 (1971), the Supreme Court placed a broad and remedial interpretation upon § 22. The Court said:
 
 
 20
 "Thus, on its face, the section permits a reopening within one year 'because of a mistake in a determination of fact.' There is no limitation to particular factual errors, or to cases involving new evidence or changed circumstances. The Act at one time did authorize reopening only on the 'ground of a change in conditions,' 44 Stat. 1437, but was amended in 1934 expressly to 'broaden the grounds on which a deputy commissioner can modify an award . . . when changed conditions or a mistake in a determination of fact makes such modification desirable in order to render justice under the act.' S.Rep. No. 588, 73d Cong., 2d Sess., 3-4 (1934); H.R.Rep. No. 1244, 73d Cong., 2d Sess., 4 (1934). The plain import of this amendment was to vest a deputy commissioner with broad discretion to correct mistakes of fact, whether demonstrated by wholly new evidence, cumulative evidence, or merely further reflection on the evidence initially submitted.
 
 
 21
 "Nor does our construction 'render meaningless the provision (of § 21 of the Act, 33 U.S.C. § 921) that (a compensation) order becomes final unless proceedings for review are brought within thirty days.' Case v. Calbeck, 304 F.2d 198, 201 (CA5 1962). The review authorized by § 21 is limited to the legal validity of the award; a district court may set aside an award only if it is 'not in accordance with law.' Section 21(b), 33 U.S.C. § 921(b). The 30-day limit of § 21 is not 'rendered meaningless' by setting a different time limit for a redetermination of fact. Moreover, the absence of a provision in § 21 for the judicial review of evidence confirms the need for a broad discretion in the deputy commissioner, to review factual errors in an effort 'to render justice under the act.' " (404 U.S. pp. 255-56, 92 S.Ct. p. 407, 30 L.Ed.2d p. 425)
 
 
 22
 Banks v. Chicago Grain Trimmers Assn., Inc., 390 U.S. 459, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1967), makes it clear that the authority to re-open is not limited to any particular type of facts. After reviewing the legislative history of § 22, the Supreme Court observed:
 
 
 23
 "We find nothing in this legislative history to support the respondent's argument that a 'determination of fact' means only some determinations of fact and not others. * * * The respondent has referred us to no decision, state or federal, holding that a statute permitting review of determinations of fact is limited to issues relating to disability." (p. 465, 88 S.Ct. p. 1144, 20 L.Ed.2d p. 36)
 
 
 24
 Although Banks and O'Keeffe dealt only with reopening under § 22 for the benefit of claimants, there is nothing in the Court's language or the legislative history to suggest that the ambit of § 22 is narrower for employers seeking to "decrease" or "terminate" a prior award. Since Banks and O'Keeffe permitted reopening with respect to the work-relatedness of the injury for which compensation was sought, a threshold question of the very existence of liability rather than merely its extent, the Benefits Review Board erred in holding "jurisdictional facts" here the question whether an employment relationship existed between decedent and petitioner outside the purview of § 22.
 
 
 25
 The Board's second ground fails under the same reasoning. Once § 22 is viewed to permit reopening of all mistaken determinations of fact, including those going to the existence of liability, executory awards may be "terminated" where the Deputy Commissioner or the Administrative Law Judge finds error on such threshold matters as the existence of an employment relationship or the work-relatedness of the injury. There is no warrant in the statutory language or legislative history to exclude from the authority to "terminate" the power to cancel or nullify an award in a proper case.
 
 
 26
 However, even though there was power to reopen, there is no reason to think that there should be an automatic reopening simply because the Deputy Commissioner or the Administrative Law Judge found a mistake in a determination of fact.
 
 
 27
 Professor Arthur Larson says, 3 Larson, Workmen's Compensation Law, § 81.52, "The concept of 'mistake' requires careful interpretation. It is clear that an allegation of mistake should not be allowed to become a back door route to re-trying a case because one party thinks he can make a better showing on the second attempt."
 
 
 28
 As the Supreme Court made clear in its reference to the legislative explanation for the 1934 broadening of the grounds for reopening under § 22, the basic criterion is whether reopening will "render justice under the act." Banks, supra; O'Keeffe, supra.
 
 
 29
 The congressional purpose in passing the law would be thwarted by any lightly considered reopening at the behest of an employer who, right or wrong, could have presented his side of the case at the first hearing and who, if right, could have thereby saved all parties a considerable amount of expense and protracted litigation.
 
 
 30
 A Texas trial court held, on facts less aggravated but similar in principle to these, that reopening should not have been allowed, Lykes Bros. S. S. Co., Inc. v. Sheppeard, 37 F.Supp. 584 (S.D.Tex., 1941). A seaman obtained an award for injury to his arm and shoulder and was paid compensation for a 15% permanent disability of his arm. Within a year he filed a claim for reopening and the claim was reopened by a Deputy Commissioner. In the second hearing the evidence and the findings of the Commissioner were that the disability was 25% instead of 15%. The increased rating was based on the fact that at the second hearing the employee described additional symptoms which amounted to an increase in the disability. The court, in reversing an award of increased disability, said:
 
 
 31
 "Looking to the entire record, the reasonable conclusion is that although Stansfield knew the facts, he at no time during the entire period that elapsed from the date of his injury (September 15, 1938) until the second hearing (December 11, 1940) informed the Deputy Commissioner of his condition which affects his breathing and which is the basis of the Deputy Commissioner's action in increasing the amount of the award.
 
 
 32
 "I think an employee may not thus withhold the facts from the Deputy Commissioner and be lawfully given modification of the award under Section 922. It is clear the case comes neither within the letter nor the spirit of Section 922." (p. 587)
 
 
 33
 It is not necessary to go as far as the Lykes decision in order to conclude that reopening in the case of Cephas would not "render justice under the act." It would be difficult to describe a history of greater recalcitrance, of greater callousness towards the processes of justice, and of greater self-serving ignorance, than the attitude displayed by McCord in the four-plus years from the time of Cephas' death on January 1, 1969, to January 31, 1973, when McCord, after receiving notice of the Deputy Commissioner's adverse award, first began to assert his defenses.
 
 
 34
 Therefore, although the Administrative Law Judge did have jurisdiction to reopen the claim upon grounds of a mistake in a determination of fact, he should have done so only "to render justice under the act," and this is subject to review by the Benefits Review Board. If on remand the Board should conclude that the case was properly reopened under that standard, and that the award was otherwise properly terminated, the question remains whether the decision should be retrospective, freeing the petitioner McCord of all liability, or prospective only from the date that such decision shall have been rendered, thus preserving entitlement in decedent's dependents to benefits up to that time. Under the terms of § 22, it is within the discretion of the Administrative Law Judge, subject to review by the Board, to determine whether according retroactive effect to a correcting order will "render justice under the act."
 
 
 35
 The cause will be remanded to the Benefits Review Board for further proceedings consistent with this opinion.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 292(d)