989 F.2d 501
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Docie YORK, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent.
 No. 92-3351.
 United States Court of Appeals, Sixth Circuit.
 March 15, 1993.
 
 Before NATHANIEL R. JONES and SUHRHEINRICH, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant-petitioner Docie York challenges the modification of her black lung benefits. For the following reasons, we vacate the Benefits Review Board's February 20, 1992 Decision and Order, and remand this action to the administrative law judge to determine whether modification of York's black lung benefits would "render justice" under the Longshore and Harbor Workers' Compensation Act.
 
 I.
 
 2
 Claimant-petitioner Docie York ("York") filed an application for benefits under Part B of the Black Lung Benefits Act, 30 U.S.C. §§ 901-945, in January, 1973, following the death of her husband, Paul York (the "decedent"), on January 1, 1971. York's application listed the decedent's employment history which indicated that Paul York had worked as a coal miner for more than twenty years. The Social Security Administration denied York's claim on June 8, 1973, and again on November 10, 1973.
 
 
 3
 In 1978, York elected to have her claim reviewed by the Social Security Administration pursuant to the Black Lung Benefits Reform Act of 1977. After denying York's application on June 4, 1979, the Social Security Administration referred York's claim to the Department of Labor ("DOL") pursuant to 30 U.S.C. § 945(a)(2)(B)(i). On September 16, 1980, the DOL awarded York benefits retroactive to January 1, 1974 ($31,527), and prospective benefits ($381 per month) after finding "[t]hat the deceased miner [had] worked in the Nation's coal mines for a period of 15 years from 1946 to 1964." Department of Labor's Award of Benefits at 1.
 
 
 4
 On July 7, 1982, the DOL modified York's award following a "computation error" which resulted in a $174 overpayment of benefits to York which she refunded. On November 22, 1983, the DOL reduced the claimant's monthly benefits because York's son was no longer a dependent. York contested neither of these DOL actions.
 
 
 5
 On April 22, 1987, the DOL informed York that her claim was being reviewed as part of the DOL's "continuing audit process," Joint Appendix at 34, adding that "additional documentation is needed in your file," id., regarding the decedent's employment history. York thereafter submitted documentation to the DOL.
 
 
 6
 On June 1, 1987, the DOL issued an order directing York "to show cause within thirty days why the Award of Benefits in the claim should not be modified to a denial," Department of Labor's Order to Show Cause at 1, because "the evidence available in the claim establishes that the miner had less than five years of coal mine employment," id., and "the finding that the miner had over ten years of coal mine work represents an error of fact and constitutes a basis for modification of the Award of Benefits [pursuant to] 20 C.F.R. 725.310(a)." Id. Though York submitted additional evidence regarding the decedent's employment history, the DOL determined that York's Black Lung benefits should be modified, and all future benefits denied:
 
 
 7
 The evidence establishes that the miner worked for a number of years in and around the Nation's coal mines. Therefore, it is determined that he was a coal miner within the definition set forth in 20 C.F.R. § 725.202.
 
 
 8
 The exact length of the miner's qualifying coal mine employment is an issue in this case, since it determines which legal presumptions, if any, apply to the evidence presented.
 
 
 9
 * * *
 
 
 10
 In the original determination, a finding of fifteen (15) years of coal mine employment from 1946-1960 was made based on Mrs. York's allegation and an affidavit from Charlie Gibson. However, a review of the other evidence of record clearly reveals that it is impossible for Mr. York to have worked in the mines for even ten (10) years during the period 1946-1960.
 
 
 11
 ............................................................
 
 
 12
 ....................
 
 
 13
 * * *
 
 
 14
 With less than ten (10) years of coal mine employment established, the medical standards contained in 20 C.F.R. Part 410 must be applied to the medical issues. However, the available medical evidence is restricted solely to hospital records and to the death certificate, none of which establish that Mr. York suffered from, was treated for, or was diagnosed as having, pneumoconiosis or a chronic pulmonary impairment. Thus, pneumoconiosis has not been established by any of the available methods provided in 20 C.F.R. § 410.414 or in 20 C.F.R. § 410.490. Further, the evidence clearly reflects that Mr. York's death was due to cardiac rather than pulmonary problems.
 
 
 15
 Despite its scarcity, the evidence clearly supports a finding that Mr. York did not have a disabling pulmonary problem. Had such a problem existed, Mr. York would have sought treatment and such treatment would have been reflected in the hospital records. The absence of any mention of chronic pulmonary problems provides substantial evidence that Mr. York was not totally disabled by a pulmonary problem.
 
 
 16
 In view of the evidence, I find that an error in a determination of fact was made in the original decision awarding benefits. As a result, I conclude that under the provisions of 20 C.F.R. § 725.310 the decision should be modified to one of denial.
 
 
 17
 Department of Labor's November 12, 1987 Proposed Decision and Order at 1-4. York thereafter requested a formal hearing before an administrative law judge ("ALJ").
 
 
 18
 Following a hearing on November 29, 1988, the ALJ issued his Decision and Order Denying Benefits on May 24, 1989, after finding that the decedent had worked for only four and one-half years in "coal mine employment:"
 
 
 19
 I conclude that the medical evidence, even when considered together with other evidence of record, fails to establish the existence of a totally disabling chronic respiratory or pulmonary impairment that arose out of coal mine employment pursuant to § 410.454(c). The claimant's testimony and the other statements of persons purporting to be familiar with Mr. York's condition were indicative of disability due to a breathing problem, but such testimony alone cannot establish entitlement to benefits, particularly where the medical evidence is not supportive or contradicts such testimony. Furthermore, in this case, it appears that the symptoms described could equally be applicable to the conditions such as arteriosclerotic heart disease and diabetes mellitus as noted in the medical records.
 
 
 20
 The evidence in this case also fails to establish entitlement to benefits under Part 718. First, the record does not establish the existence of pneumoconiosis pursuant to § 718.202(a)(1), because none of the x-rays were classified as positive for pneumoconiosis, § 718.202(a)(2), because the record contains no autopsy or biopsy evidence, § 718.202(a)(3), because none of the presumptions found therein are applicable, § 718.202(a)(4), because a weighing of all of the relevant evidence fails to establish the existence of pneumoconiosis as defined in § 718.201.
 
 
 21
 Claimant, Docie York, is not entitled to benefits under the Act.
 
 
 22
 Administrative Law Judge's Decision and Order Denying Benefits at 11. York thereafter filed a timely appeal with the Benefits Review Board (the "Board").
 
 
 23
 On February 20, 1992, the Board issued its Decision and Order affirming the ALJ's Decision and Order Denying Benefits:
 
 
 24
 On appeal, claimant contends that the deputy commissioner's modification of the award and termination of benefits was inappropriate because Congress did not intend to allow modification where it would not render justice under the Act. Claimant argues that Congress intended that modification be applied only in those cases where it would benefit the worker. Claimant also argues that the re-opening of the claim was erroneous, as the deputy commissioner failed to consider whether the interests of justice would be served by modification. Similarly, claimant contends that the administrative law judge also failed to determine whether modification would render justice in this case, and asserts that this omission is a violation of the Administrative Procedure Act. Finally, claimant contends that res judicata prevents the deputy commissioner's attempt, through modification, to relitigate previously resolved issues....
 
 
 25
 After consideration of the administrative law judge's Decision and Order, the arguments raised on appeal, and the evidence of record, we affirm the administrative law judge's decision. Section 22 of the Longshore Act provides that upon his or her own initiative, or upon the request of any party on the grounds of a change in conditions or because of a mistake in a determination of fact, the fact-finder may, at any time prior to one year after the date of the last payment of benefits, or at any time before one year after the denial of a claim, reconsider the terms of an award or denial of benefits. Neither the statute nor its implementing regulations require the deputy commissioner to make a specific finding as to whether modification would serve the interests of justice under the Act prior to initiating modification proceedings.
 
 
 26
 Contrary to claimant's contention, the intended purpose of modification based on a mistake of fact is to vest the fact-finder with broad discretion to correct mistakes of fact, whether demonstrated by wholly new evidence, cumulative evidence, or merely further reflection on the evidence initially submitted. Further, the Board has held that modification pursuant to Section 22 of the Act was intended to displace traditional notions of res judicata. We thus reject claimant's contention that the deputy commissioner erred in initiating and determining modification in this case.
 
 
 27
 We note that claimant alleges no general or specific error with the deputy commissioner's stated basis for modification pursuant to section 725.310. In addition, the administrative law judge's finding of four and one-half years of coal mine employment based on an independent review of the relevant evidence of record and his findings ... are unchallenged on appeal and are, therefore, affirmed.
 
 
 28
 Finally, with regard to claimant's assertion that the administrative law judge never made a finding as to whether modification would render justice under the Act, we hold that inasmuch as the administrative law judge found that claimant is not entitled to benefits, he implicitly found that modification would render justice under the Act. We, therefore, reject claimant's assertion that the administrative law judge's failure to make a specific finding relevant to this issue compels a reversal or remand of his Decision and Order.
 
 
 29
 Benefits Review Board's February 20, 1992 Decision and Order at 3-5.
 
 
 30
 York thereafter filed a timely petition to review the Benefit Review Board's Decision and Order.
 
 II.
 Standard of Review
 
 31
 Noting that the Black Lung Benefits Act was enacted to provide benefits to coal miners "who are totally disabled due to pneumoconiosis and to the surviving dependents of miners whose death was due to such disease," 30 U.S.C. § 901(a), the Sixth Circuit has held:
 
 
 32
 This court has a limited scope of review over the decisions of the Benefits Review Board. The Board itself may set aside an administrative law judge's findings of fact and conclusions of law only if they are not supported by substantial evidence, or not in accordance with law. Our scope of review is limited to scrutinizing Board decisions for errors of law and for adherence to the statutory standard governing the Board's review of the administrative law judge's factual determinations. What this means, in effect, is that the standards of review for the Benefits Review Board and this Court are the same.
 
 
 33
 Warman v. Pittsburg & Midway Coal Mining Co., 839 F.2d 257, 258 (6th Cir.1988) (quoting Welch v. Benefits Review Bd., 808 F.2d 443, 445 (6th Cir.1986)). See also 33 U.S.C. § 921(b)(3) ("The findings of fact in the decision under review by the [Benefits Review] Board shall be conclusive if supported by substantial evidence in the record considered as a whole."); Zimmerman v. Director, Office of Workers' Compensation Programs, 871 F.2d 564, 566 (6th Cir.1989) ("Judicial review is, therefore, addressed to the question whether the ALJ--not the Board--had substantial evidence on which to base his or her decision. The ALJ, not the Board, enjoys a statutorily-mandated deference to findings of fact."). The Sixth Circuit has consistently defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Ramey v. Kentland Elkhorn Coal Corp., 755 F.2d 485, 488 (6th Cir.1985).
 
 
 34
 "Rendering Justice Under The Act"
 
 
 35
 The Black Lung Benefits Act provides that black lung claims are to be processed in accordance with the procedural provisions of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901-950, "except as otherwise provided ... by regulations of the Secretary." 30 U.S.C. § 932(a). Accordingly, section 22 of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 922, governs the modification of Black Lung benefits. 33 U.S.C. § 922 provides:
 
 
 36
 Upon his own initiative, or upon the application of any party in interest ... on the ground of a change in conditions or because of a mistake in a determination of fact by the deputy commissioner, the deputy commissioner may, at any time prior to one year after the date of the last payment of compensation, whether or not a compensation order has been issued, or at any time prior to one year after the rejection of a claim, review a compensation case ... [and] issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation. Such new order shall not affect any compensation previously paid....
 
 
 37
 Id.
 
 In the instant action, York argues:
 
 38
 The Deputy Commissioner has not made any finding that it would serve the interest of justice to reopen Docie York's claim for benefits because a mistake of fact was made. Because reopening is not automatic, the Deputy Commissioner's failure to determine that justice would be rendered under the Act prohibits the reopening. Likewise, the ALJ failed to make the finding even though the issue was raised in Petitioner's closing brief.
 
 
 39
 One of the issues that [an] ALJ must decide is whether [a] modification hearing is necessary to render justice under the Act in a particular case. ALJ Stewart's decision falls far short of the Administrative Procedure Act requirements in that he did not find that modification was necessary to render justice under the Act.
 
 
 40
 * * *
 
 
 41
 Modification of Docie York's 1980 award of benefits did not render justice under the Act. Petitioner requests that the Benefits Review Board decision be reversed and that benefits be restored to her. Alternatively, she asks that the case be remanded for further proceedings.
 
 
 42
 Petitioner's Brief at 13-15.
 
 
 43
 Interestingly, the respondent agrees that the Benefits Review Board's February 20, 1992 Decision and Order should be vacated, and York's claim remanded to the ALJ:
 
 
 44
 As a general rule, we accept the assumption underlying claimant's argument that there may be some decisions which, even though based on an erroneous determination of the facts, should remain final because their modification would not render justice under the Act. Moreover, we also agree with the claimant that the ALJ should have made an explicit finding regarding whether modification would render justice in this case, and that the case should be remanded accordingly.
 
 
 45
 ............................................................
 
 
 46
 ....................
 
 
 47
 * * *
 
 
 48
 Although the ALJ erred in failing to make a specific finding regarding whether modification of the award of benefits would render justice under the Act, the proper course is to remand this case to the ALJ rather than award benefits as a matter of law.
 
 
 49
 * * *
 
 
 50
 In our view, the discretion thus exists to allow the ALJ to refuse to grant modification in a case even where the record clearly demonstrates a mistake in a determination of fact. It is equally true, however, that this discretion is appropriately exercised only where the record demonstrates particularly egregious conduct by the party seeking modification.
 
 
 51
 * * *
 
 
 52
 Moreover, we believe that there is no need to make a specific finding in every modification case concerning whether the requested modification meets this test. Where, as here, a party has specifically argued to the ALJ that modification would not render justice under the Act, and has presented testimony in support of that argument, we believe that it is incumbent upon the ALJ to address the issue and make specific findings regarding his exercise of discretion.... [S]ince claimant provided specific arguments in support of her position in a post-hearing brief to the ALJ, the ALJ should be required to explain why modification would render justice under the Act.
 
 
 53
 Respondent's Brief at 10-17.
 
 
 54
 "In deciding whether to reopen a case under § 22 [33 U.S.C. § 922], a court must balance the need to render justice against the need for finality in decision making." General Dynamics Corp. v. Director, Office of Workers' Compensation Programs, 673 F.2d 23, 25 (1st Cir.1982). See also Blevins v. Director, Office of Workers' Compensation Programs, 683 F.2d 139, 142 (6th Cir.1982) ("The purpose of this section is to permit a deputy commissioner to modify an award where there has been 'a mistake in a determination of fact [which] makes such a modification desirable in order to render justice under the act.' ") (alteration in original) (quoting Banks v. Chicago Grain Trimmers Ass'n, 390 U.S. 459, 464 (1968)).
 
 
 55
 Consistent with its decision to "remand for a determination of whether reopening this case is desirable in order 'to render justice under the act,' " McCord v. Cephas, 532 F.2d 1377, 1378 (D.C.Cir.1976), the United States Court of Appeals for the District of Columbia Circuit held:
 
 
 56
 Once § 22 is viewed to permit reopening of all mistaken determinations of fact, including those going to the existence of liability, executory awards may be "terminated" where the Deputy Commissioner or the Administrative Law Judge finds error on such threshold matters as the existence of an employment relationship or the work-relatedness of the injury. There is no warrant in the statutory language or legislative history to exclude from the authority to "terminate" the power to cancel or nullify an award in a proper case.
 
 
 57
 However, even though there was power to reopen, there is no reason to think that there should be an automatic reopening simply because the Deputy Commissioner or the Administrative Law Judge found a mistake in a determination of fact.
 
 
 58
 "The concept of 'mistake' requires careful interpretation. It is clear that an allegation of mistake should not be allowed to become a back door route to retrying a case because one party thinks he can make a better showing on the second attempt."
 
 
 59
 As the Supreme Court made clear in its reference to the legislative explanation for the 1934 broadening of the grounds for reopening under § 22, the basic criterion is whether reopening will "render justice under the act."
 
 
 60
 The congressional purpose in passing the law would be thwarted by any lightly considered reopening at the behest of an employer who, right or wrong, could have presented his side of the case at the first hearing and who, if right, could have thereby saved all parties a considerable amount of expense and protracted litigation.
 
 
 61
 * * *
 
 
 62
 [A]lthough the Administrative Law Judge did have jurisdiction to reopen the claim upon grounds of a mistake in a determination of fact, he should have done so only "to render justice under the act," and this is subject to review by the Benefits Review Board.
 
 
 63
 Id. at 1380-81 (citations omitted). See generally O'Keeffe v. Aerojet-General Shipyards, Inc., 404 U.S. 254, 256 (1971) (The deputy commissioner is vested "with broad discretion to correct mistakes of fact, whether demonstrated by wholly new evidence, cumulative evidence, or merely further reflection on the evidence initially submitted."); General Dynamics Corp., 673 F.2d at 26 ("We are not insensitive to the employer's claim that reopening here might be said to be in the interests of justice. Nevertheless, we hold that such a reopening would not serve the orderly administration of justice which depends in no small part upon finality of judicial determinations.").
 
 
 64
 Though precedent does not expressly provide that an ALJ must "explain why modification would render justice under the [Longshore and Harbor Workers' Compensation] Act," Respondent's Brief at 17, both parties urge that we infer such a requirement. Because we believe that an articulated factual finding is implicitly required by the authorities cited, we vacate the Benefits Review Board's February 20, 1992 Decision and Order denying future benefits to York because the Board's "implicit [finding] that modification would render justice under the Act," Benefit Review Board's Feb. 20, 1992 Decision and Order at 5, is inadequate.
 
 III.
 
 65
 For the aforementioned reasons, we VACATE the Benefits Review Board's February 20, 1992 Decision and Order, and REMAND this action to the administrative law judge to determine whether modification of York's black lung benefits would "render justice" under the Longshore and Harbor Workers' Compensation Act.