82 F.3d 419
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Docie YORK, Widow of Paul York, Petitioner-Appellant,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent-Appellee.
 No. 95-3555.
 United States Court of Appeals, Sixth Circuit.
 April 17, 1996.
 
 Before: CONTIE, SUHRHEINRICH and COLE, Circuit Judges.
 PER CURIAM.
 
 
 1
 Petitioner-appellant, Docie York, challenges the modification and denial of her black lung benefits. For the following reasons, we affirm the Benefits Review Board's decision that modification and denial of York's black lung benefits would "render justice" under the Longshore and Harbor Workers' Compensation Act.
 
 I.
 
 2
 Petitioner-appellant, Docie York, made an application for benefits under Part B of the Black Lung Benefits Act, 30 U.S.C. §§ 901-945, in January, 1973, following the death of her husband, Paul York, on January 1, 1971. York's application listed her husband's employment history, which indicated that Paul York had worked as a coal miner for more than twenty years. The Social Security Administration denied York's claim on June 8, 1973, and again on November 10, 1973.
 
 
 3
 In 1978, York elected to have her claim reviewed by the Social Security Administration pursuant to the Black Lung Benefits Reform Act of 1977. After denying York's application on June 4, 1979, the Social Security Administration referred her claim to the Department of Labor ("DOL") pursuant to 30 U.S.C. § 945(a)(2)(B)(i). On September 16, 1980, the DOL awarded York benefits retroactive to January 1, 1974 ($31,527), and prospective benefits ($381 per month) after finding "[t]hat the deceased miner [had] worked in the Nation's coal mines for a period of 15 years from 1946 to 1964."
 
 
 4
 On July 7, 1982, the DOL modified York's award because a "computation error" resulted in a $174 overpayment, which York refunded. On November 22, 1983, the DOL reduced petitioner York's monthly benefits because her son was no longer a dependent. Petitioner did not contest either of these DOL actions.
 
 
 5
 On April 22, 1987, the DOL informed York that her claim was being reviewed as part of the DOL's "continuing audit process," and stated that additional documentation was needed regarding her husband's employment history. York thereafter submitted documentation to the DOL.
 
 
 6
 On June 1, 1987, the DOL issued an order directing York to show cause why her award of benefits should not be modified to a denial, because "the evidence available in the claim establishes that the miner had less than five years of coal mine employment." The order stated that the finding that the miner had fifteen years of coal mine work represented an error of fact and constituted a basis for modification of the award of benefits pursuant to 20 C.F.R. 725.310(a). Although York submitted additional evidence regarding her husband's employment history, the DOL determined that York's black lung benefits should be modified, and all future benefits should be denied in an order dated February 20, 1992.
 
 
 7
 Petitioner York appealed this decision of the Benefits Review Board to the Court of Appeals for the Sixth Circuit. In a per curiam opinion, York v. Director, OWCP, 989 F.2d 501 (Table), 1993 WL 72483 (6th Cir. March 15, 1993) [hereinafter, "the prior opinion"], this court determined that in the DOL's original determination, a finding of fifteen years of coal mine employment from 1946-1964 was made based on Mrs. York's allegations and an affidavit from Charlie Gibson. However, it was undisputed that a review of the other evidence of record clearly revealed that it was impossible for Mr. York to have worked in the mines for even ten years during the period 1946-1964.
 
 
 8
 In both of her 1973 applications for benefits, Mrs. York had been asked for information regarding her husband's coal mine employment. In response, she had listed her husband's employment as follows: C & D Coal Company, Letcher County, Jan. 1949 to 1964; H B Coal, Breeders Creek, Kentucky, 1943 to 1948; and "various other mines ... for years." Mrs. York also submitted statements from Coy Banks, who stated that he worked with her husband from 1943 to 1948 at Harbor Banks (H B) Coal Company, and from Charlie Gibson, who stated that he was the manager of C & D Coal Company, and that Paul York had worked there from 1949 to 1964. She also submitted the birth certificates of their four children: Ernie, Jerry, James, and Helen York. The children were all born in Cincinnati, Ohio from 1955 to 1962. However, Ernie's birth certificate, issued in 1955, listed Mr. York's occupation as a buffer in manufacturing. The remaining children's birth certificates listed their father's occupation as a press operator.
 
 
 9
 In determining that an error had been made, the DOL also relied on an Itemized Statement of Earnings prepared by the Social Security Administration. The statement listed the following coal mine employment: Collins & Logan Coal Company in the third quarter of 1948; Perry Sloan Coal Company in the second and third quarters of 1947; G R Lewis Coal Company in the last quarter of 1947; Meen/Haskins Coal Company in the last quarter of 1948 and the first two quarters of 1949; H C Banks Coal Company in the second quarter of 1951; and Polly Coal Company in the first quarter of 1952. The statement also contained reports from a number of other companies from 1943 to 1948, and indicated that Mr. York was employed by Nutone, Inc. in 1950-51, 1952, and from 1954-1962.
 
 
 10
 In response to the DOL's inquiry, Mrs. York again submitted the statements of Charlie Gibson and Coy Banks, and submitted an employment history which listed the miner's employment with H B Coal Company from 1943 to 1948, and C & D Coal Company from 1949 to 1964. However, in contradiction to this contention, the DOL introduced the affidavit of J. Bennett Stewart, a senior claims examiner with the Department's Pikeville office, who stated that he had reviewed the Annual Reports of the Kentucky Department of Mines and Minerals for the period of 1949-1951. He found a C & D Coal Company operating in Letcher County, Kentucky, only from 1949-51.
 
 
 11
 This court in its prior opinion did not disturb the Benefits Review Board's February 20, 1992, holding that the district director had the authority to initiate modification proceedings, and that a mistake in determination of fact had been made in Mrs. York's initial award of benefits. However, this court vacated the Board's decision and ordered the case remanded for an explicit finding by the Administrative Law Judge ("ALJ") as to whether modification in this case would "render justice" within the meaning of the Act. This court stated in its prior opinion:
 
 
 12
 Though precedent does not expressly provide that an ALJ must "explain why modification would render justice under the [Longshore and Harbor Workers' Compensation] Act," both parties urge that we infer such a requirement. Because we believe that an articulated factual finding is implicitly required by the authorities cited, we vacate the Benefits Review Board's February 20, 1992 Decision and Order denying future benefits to York because the Board's "implicit [finding] that modification would render justice under the Act," is inadequate.
 
 
 13
 Slip Op. at 7. (Citations omitted).
 
 
 14
 On remand, the ALJ made explicit findings and determined that modification based on the DOL error, which was caused by petitioner's incorrect statements about her husband's employment, would "render justice" under the Act and again denied benefits. The Benefits Review Board affirmed in a Decision and Order of March 16, 1995, and petitioner filed a timely pro se appeal with this court. Because this court in its prior opinion has already approved the finding of the ALJ that the record is insufficient to establish Mrs. York's entitlement to black lung benefits and that the DOL erred in initially approving the claim, the only issue before us is whether the ALJ properly found that modification of the award of benefits would "render justice" under the Act.
 
 II.
 
 15
 A claim filed under the Black Lung Benefits Act is processed by the Department of Labor's Office of Workers' Compensation Programs. 20 C.F.R. § 725.401. A district director develops relevant evidence, 20 C.F.R. §§ 725.404-725.407, and makes initial findings of fact, 20 C.F.R. §§ 725.410, 725.415. If any party objects to the district director's proposed resolution of the case, he may refer the claim for a hearing before an ALJ. 20 C.F.R. § 725.419(a). After this hearing, the ALJ makes de novo findings of fact and issues a decision and order denying or awarding the claim. 20 C.F.R. § 725.476. This decision becomes final unless it is timely appealed to the Benefits Review Board. 20 C.F.R. § 725.481.
 
 
 16
 Within one year of the last payment of benefits, or within one year of the final denial in a case, an aggrieved party may request modification, or the deputy commissioner may initiate modification procedures on his own. This right of modification arises under § 22 of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 922, which is incorporated in the Black Lung Benefits Act at 30 U.S.C. § 932(a). Section 22 provides in pertinent part:
 
 
 17
 [u]pon his own initiative, or upon the application of any party in interest, ... on the ground of a change in conditions or because of a mistake in a determination of fact by the deputy commissioner, the deputy commissioner may ... review a compensation case ... in accordance with the procedure prescribed in support of claims in section 919....
 
 
 18
 33 U.S.C. § 922. The scope of modification under § 22 is broad. As the Supreme Court has stated, the "plain import" of the 1934 amendment, adding mistake in a determination of fact, was "to vest a [fact finder] with broad discretion to correct mistakes of fact, whether demonstrated by wholly new evidence, cumulative evidence, or merely further reflection on the evidence initially submitted." O'Keeffe v. Aerojet-General Shipyards, Inc., 404 U.S. 254, 256 (1971).
 
 
 19
 Modification is not automatic, but discretionary. Both the statute and the implementing regulation provide that the fact finder "may" reconsider the terms of an award or denial of benefits. 33 U.S.C. § 922; 20 C.F.R. § 725.310(a). In deciding whether to reopen a case under 33 U.S.C. § 922, a court must balance the need to render justice against the need for finality in decision making. General Dynamics Corp. v. Director, OWCP, 673 F.2d 23, 25 (1st Cir.1982). As the Supreme Court stated in Banks v. Chicago Grain Trimmers Ass'n, 390 U.S. 459, 464 (1968), the purpose of 33 U.S.C. § 922 is to permit a district director to modify an award where there has been "a mistake in a determination of fact [which] makes such modification desirable in order to render justice under the act." See also Blevins v. Director, OWCP, 683 F.2d 139, 142 (6th Cir.1982). An allegation of mistake should not be allowed to become a back door route to retrying a case because one party thinks he can make a better showing on the second attempt. McCord v. Cephas, 532 F.2d 1377, 1380 (D.C.Cir.1976). As the Supreme Court made clear in its reference to the legislative explanation for the 1934 broadening of the grounds for reopening under § 22, the basic criterion is whether reopening will "render justice" under the Act. O'Keeffe, 404 U.S. at 256.
 
 
 20
 In the present case, on remand, the ALJ made the following explicit findings about whether modification of York's claim would render justice under the Act. In her initial application filed in 1973, petitioner alleged that her husband had over twenty years of coal mining experience. She alleged he worked for H B Coal from 1943 to 1948, and for C & D Coal Company from 1949 to 1964. These assertions were supported by an affidavit from Charlie Gibson attesting that Paul York worked for C & D Coal Company from 1949 to 1964. The ALJ recalled, however, that at the hearing before him, petitioner had admitted that her husband was not working in the coal mines when she married him in 1954.
 
 
 21
 Furthermore, the birth certificates of the miner's children, all of whom were born in Cincinnati from 1955 through 1962, stated that Mr. York was working as a buffer in a manufacturing plant or as a press operator. Thus, the ALJ found that York knew that her husband was not working as a coal miner at the time her children were born, although she stated that he was a coal miner from 1949 to 1964 on her application for benefits.
 
 
 22
 The ALJ, therefore, concluded that the DOL's initial award of benefits was based on a coal mine employment history of fifteen years, which was in error. He found that although this finding was based on questionable information, which should have been more closely reviewed by the DOL at the time, this mistake should not estop the DOL from correcting its error through the modification process. The ALJ reasoned that this type of error is exactly the type of mistake which the modification process was designed to remedy. The ALJ noted that petitioner testified she would not have purchased a home if she had realized that her benefits might cease. The ALJ reasoned, however, that since her award was based on false information, which she and her friends had submitted, she was not in an equitable position to complain about the loss of her black lung benefits.
 
 
 23
 Finally, the ALJ found that the petitioner was essentially arguing that once black lung benefits have been awarded, such benefits can never be reconsidered or changed unless the amount is to be increased, stating:
 
 
 24
 This argument is inconsistent with the provisions of 20 C.F.R. § 725.310 and Section 22 of the Longshore and Harbor Workers' Compensation Act, which expressly provide for modification in order to correct a mistake of fact. It was never the intention of Congress to provide benefits for those persons who were not eligible to receive them, and modification is the process established for correcting mistakes when benefits have been awarded erroneously. To hold otherwise would be to make a mockery of the Black Lung Benefits Act. Accordingly, I find that modification would "render justice" under the Longshore and Harbor Workers' Compensation Act where, as in this case, the original award was based on false information which was supplied to the Department of Labor by the Claimant.
 
 
 25
 Therefore, the ALJ concluded that York's black lung benefits should be modified and all future benefits should be denied. The Benefits Review Board affirmed the ALJ in a Decision and Order issued on March 16, 1995.
 
 
 26
 We agree with the ALJ's analysis. Our scope of review is limited to scrutinizing Board decisions for errors of law and for adherence to the substantial evidence statutory standard governing the Board's review of the ALJ's factual determinations. Warman v. Pittsburg & Midway Coal Mining Co., 839 F.2d 257, 258 (6th Cir.1988).
 
 
 27
 In the present case, the record clearly indicates that, whether intentionally or unintentionally, petitioner provided false information to the DOL regarding the duration of her husband's coal mine employment. Reliance on that false information was a critical factor in the DOL's decision to award benefits. Therefore, the ALJ properly found that the petitioner had no equitable grounds from which to argue that modification of her award, even seven years after it was initially granted, would not render justice under the Act.
 
 
 28
 Petitioner is correct in stating that in initially awarding benefits, the district director failed to thoroughly review the records him and failed to note the discrepancies discussed previously. In failing to do so, however, the district director merely made a mistake, and the correction of such a mistake is the explicit function of the modification provision pursuant to 33 U.S.C. § 922. The present case was not reopened in order to present a new theory of the case or to correct a misjudgment of counsel. See General Dynamics, 673 F.2d at 26. Moreover, there was no egregious behavior on the part of the district director that would suggest that modification of York's award would not render justice under the Act. See McCord, 532 F.2d at 1380-81. On the contrary, the record clearly shows that York provided false information to the DOL in initially securing the award of benefits.
 
 
 29
 Petitioner also argued that reopening her award more than seven years after it was initially granted would not render justice under the Act. However, as this court found in Jackson v. Director, OWCP, 38 F.3d 121. (Table), 1994 WL 573915 (6th Cir. Oct. 17, 1994, in which the petitioner had mistakenly received black lung benefits for ten years, "it is not unfair to terminate benefits which never should have been paid and that justice would be served by insuring that benefits are not paid from the Black Lung Disability Trust Fund based upon an error."
 
 
 30
 Finally, to the extent that petitioner urges that the government be estopped from modifying her award of benefits, we note that estoppel cannot form a basis to compel the continued payment of benefits from the government. Office of Personnel Management v. Richmond, 496 U.S. 414, 415 (1990). We believe the mere passage of seven years between the award in this case and the initiation of modification proceedings is not a sufficient reason to compel the payment of black lung benefits where it is undisputed that petitioner is not entitled to benefits.
 
 
 31
 For these reasons, the Decision and Order of the Benefits Review Board of March 16, 1995, finding that the modification and denial of petitioner's black lung benefits renders justice under the Longshore and Harbor Workers' Compensation Act, is hereby AFFIRMED.