In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3222

OLD BEN COAL COMPANY,

Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,
and JAMES E. HILLIARD,

Respondents.

Petition for Review of a Decision and
Order of the Benefits Review Board,
United States Department of Labor.

ARGUED MAY 15, 2001--DECIDED May 31, 2002


   Before RIPPLE, MANION and DIANE P. WOOD,
Circuit Judges.

   RIPPLE, Circuit Judge.  Old Ben Coal
Company ("Old Ben") petitions this court
to review a decision of the Benefits
Review Board ("BRB" or "the Board")
upholding an award of benefits under the
Black Lung Benefits Act, 30 U.S.C.
sec.sec. 901-945, to the claimant, James
A. Hilliard. For the reasons set forth in
the following opinion, the petition is
granted, and the decision of the BRB is
reversed.

I

BACKGROUND

   This case, like so many other black lung
cases, has a long and tortuous history.
James Hilliard filed for black lung
benefits on November 6, 1990. A claims
examiner at the Department of Labor
("DOL") initially denied the claim on
January 30, 1991. After receiving
additional information, however, the DOL
reversed its decision and awarded
benefits. The claim proceeded to the
Office of Administrative Law Judges for
hearing. A hearing took place before
Administrative Law Judge ("ALJ") Glenn R.
Lawrence on June 9, 1992, and, on October
30, 1992, ALJ Lawrence issued a decision
and order granting benefits. In issuing

the award, ALJ Lawrence resolved the discrepancies in x-ray readings by employing the "true doubt" rule, whichrequired that the hearing officer, when faced with "equally probative but contradictory evidence[,] . . . resolve the issue in claimant's favor." App. at 3.

Old Ben initially appealed ALJ Lawrence's decision, but later requested dismissal of the appeal to pursue a modification of the award. The case was therefore remanded to the DOL./1 During the modification proceedings, Old Ben submitted a deposition transcript of Dr. Glennon Paul, as well as pulmonary function studies belonging to a patient other than Mr. Hilliard. After examining the evidence, the district director denied modification, and Old Ben requested a hearing.

On May 12, 1994, the case returned to the Office of Administrative Law Judges for a hearing. A new ALJ/2 issued an order to show cause why the case should not be decided on the record. The record discloses no response by Old Ben. Indeed, no further activity was recorded on the case until April 22, 1995, when Old Ben informed the ALJ that Mr. Hilliard had passed away. Old Ben therefore requested a remand in anticipation of a survivor's claim. On May 25, 1995, the ALJ granted that request.

Eventually, the district director informed Old Ben's counsel that no survivor's claim had been filed, and the case returned to the Office of Administrative Law Judges. ALJ Thomas Burke was assigned the case and sent a notice of hearing to the parties. Mr. Hilliard's estate moved to have the modification petition decided on the record. ALJ Burke received no objection from Old Ben and therefore cancelled the hearing. He then denied the request for modification and explained that, even without the benefit of the discredited "true doubt" rule,/3 Mr. Hilliard's estate still had established pneumoconiosis and was entitled to benefits. Specifically, ALJ Burke was influenced by the fact that pneumoconiosis was listed as a cause of death thus "suggesting," according to the ALJ, "that its existence was confirmed on autopsy." App. at 12.

To further complicate matters, after ALJ Burke had issued his decision, Old Ben discovered that its lawyer had abandoned his law practice and had allowed multitudes of cases to go unattended. New counsel assumed responsibility for the representation and appealed the ALJ's decision. Again, however, Old Ben requested that the appeal be dismissed and that the case be remanded to the district director so that a request for modification could be processed. Mrs. Hilliard filed no objection, and the BRB granted the request on July 14, 1997.

While the case was pending before the DOL, Old Ben requested that Mrs. Hilliard sign an authorization to allow Old Ben's physicians to view Mr. Hilliard's autopsy slides. Mrs. Hilliard, however, refused to sign the authorization, and the DOL determined that Mrs. Hilliard was not under any obligation to do so. Old Ben again requested a hearing, and the DOL returned the case to the Office of Administrative Law Judges.

The case then was assigned to yet another ALJ, Linda Chapman. Prior to the hearing, Old Ben requested that ALJ Chapman order Mrs. Hilliard to sign the authorization allowing it access to the autopsy slides. ALJ Chapman denied the request. She held that

Mrs. Hilliard is under no duty to "cooperate" with the Employer in its attempt to have the award of benefits reversed. The record clearly reflects that Wayne Reynolds, the Employer's attorney at the time this matter was before Judge Burke, was aware of Mr. Hilliard's death; equally clearly, the autopsy report that the Employer now seeks was also available at that time. There is no indication in the record that the Employer, through Mr. Reynolds, ever sought to obtain this report or make it available to Judge Burke.

App. at 14. ALJ Chapman also denied a subsequent request to reconsider her decision.

After a hearing, ALJ Chapman ruled against Old Ben on its substantive application. In her order, the ALJ first recited the standard for determining whether a modification petition should be

granted:

In reviewing a petition for modification based on a mistake of fact, the Supreme Court has stated that all evidence of record should be reviewed in determining whether a mistake in a determination of fact has been made, and that the factfinder has "broad discretion to correct mistakes of fact, whether demonstrated by wholly new evidence, cumulative evidence, or merely further reflection on the evidence initially submitted.["]

App. at 33 (quoting O'Keeffe v. Aerojet-General Shipyards, Inc., 404 U.S. 254, 257 (1971)). However, "[i]nitially," she stated, "it is appropriate to consider whether this claim should be reopened at all. Modification is discretionary, not automatic: [T]he statute and implementing regulations provide that the factfinder 'may' reconsider the terms of an award or denial of benefits." App. at 33. She further stated that "[i]n deciding whether to reopen a case under 33 U.S.C. sec. 922, the court must balance the need to render justice against the need for finality in decision making." Id. (internal quotation marks and citations omitted). According to ALJ Chapman,

[a]n allegation of mistake should not be allowed to become a back door route to retrying a case because one party thinks he can make a better showing on the second attempt. As the Supreme Court made clear in its reference to the legislative explanation for the 1934 broadening of the grounds for reopening under sec. 22, the basic criterion is whether reopening will "render justice" under the Act.

App. at 33 (internal quotation marks and citations omitted).

ALJ Chapman then determined that modification in the present action would not render justice under the Act:

The modification provisions of the Act are not intended to allow a party to lay back, and, having received an adverse decision, take a second (or in this case, a third) bite at the apple by gearing up and presenting evidence that it could have presented at the first hearing on the claim. To do so would allow the Employer, under the guise of an

allegation of mistake, to retry its case simply because it feels that it can make a better showing the next time around.

. . . To do so would make mincemeat of any principles of finality, and force a Claimant who has received afavorable decision to defend against the superior resources of an Employer who could conceivably come back year after year with "new" medical opinions, until the sheer weight of those opinions, all of which could have been presented during earlier proceedings, forced a decision in the Employer's favor. Surely that constitutes piecemeal litigation and forum shopping at its worst.

App. at 35. Consequently, the ALJ declined to reopen the award. The BRB upheld the ALJ's decision, and Old Benappealed to this court.

II

DISCUSSION/4

A. Standard of Review

"Although [Old Ben] appeals the final decision of the Board, our task is to review the ALJ's decision which the Board affirmed . . . ." Arnold v. Peabody Coal Co., 41 F.3d 1203, 1206 (7th Cir. 1994). We do so under a deferential standard of review: We will not overturn the ALJ's decision if it is rational, supported by substantial evidence and consistent with governing law. See Peabody Coal Co. v. OWCP, 116 F.3d 207, 211 (7th Cir. 1997). However, a failure by the ALJ to apply the correct legal standard presents a question of law which we review de novo. Id.; see also Crowe v. Director, OWCP, 226 F.3d 609, 612 (7th Cir. 2000). Furthermore, although we defer to the determination of an ALJ regarding a particular case, it is the DOL's interpretation, not the ALJ's or the BRB's interpretation, to which "we owe the usual deference that courts give agencies' interpretations of their own regulations or governing statutes." Sahara Coal Co. v. OWCP, 946 F.2d 554, 557 (7th Cir. 1991).

B. Standard for Evaluating Modification Petitions

Both Old Ben and the DOL maintain that

the ALJ applied the wrong standard in determining whether the matter of Mr. Hilliard's benefits should be reopened. These parties urge that the governing statute requires a broader view of reopening than that adopted by the ALJ. Had the proper standard been applied, they maintain, the ALJ would have been required to reopen the matter and reevaluate the award of benefits.

We start, as we do with any statutory interpretation issue, with the language of the statute. See Condo v. Sysco Corp., 1 F.3d 599, 603 (7th Cir. 1993) ("The first step in determining the intent of Congress is to examine the plain language of the statute."). Section 22 of the Longshore and Harbor Workers' Compensation Act, as incorporated by sec. 422(a) of the Black Lung Benefits Act, 30 U.S.C. sec. 932(a), provides in relevant part:

Upon his own initiative, or upon the application of any party in interest . . . on the ground of a change in conditions or because of a mistake in a determination of fact by the deputy commissioner, the deputy commissioner may, at any time prior to one year after the date of the last payment of compensation, whether or not a compensation order has been issued, or at any time prior to one year after the rejection of a claim, review a compensation case . . . and . . . issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation.

33 U.S.C. sec. 922. Section 22, therefore, sets forth the circumstances under which an ALJ may modify an award: a change in circumstances or mistake of fact.

Both of these terms have been interpreted broadly by the Supreme Court. We look first to Banks v. Chicago Grain Trimmers Association, 390 U.S. 459 (1968). In Banks, a surviving widow had filed a first compensation claim based on a work-related injury her husband had suffered; this initial claim was denied. After discovering an eyewitness to a second work-related injury, the widow filed a new compensation action and alleged that her husband's death resulted

from this second injury. The court of appeals held that the second compensation action was barred by the doctrine of res judicata. Before the Supreme Court, the DOL urged affirmance and argued that "'a mistake in a determination of fact' in sec. 22 refers only to clerical errors and matters concerning an employee's disability, not to matters concerning an employer's liability." Id. at 462. The Supreme Court reversed. The Court stated that "[i]n the absence of persuasive reasons to the contrary, we attribute to the words of a statute their ordinary meaning, and we hold that the petitioner's second compensation action, filed a few months after the rejection of her original claim, came within the scope of sec. 22." Id. at 465 (footnote omitted). Consequently, a modification action could be instituted seeking reconsideration of the ultimate question of fact--the employer's liability.

O'Keeffe v. Aerojet-General Shipyards, Inc., 404 U.S. 254 (1972), also employed a broad reading of sec. 22. In that case, as in Banks, a claimant's initial compensation claim had been denied. The claimant, however, moved to reopen the case and, on the basis of the testimony by the employee's personal physician, the DOL reevaluated the determination and awarded benefits. The Fifth Circuit held "that in the absence of changed conditions or new evidence clearly demonstrating mistake in the initial determination, the statute simply does not confer authority upon the Deputy Commissioner to receive additional but cumulative evidence and change his mind." Id. at 254-55 (internal citations and quotation marks omitted). The Supreme Court reversed. The Court held that "[n]either the wording of the statute nor its legislative history supports this narrowly technical and impractical construction." Id. at 255 (internal quotation marks and citations omitted). The Court explained that, at one time, the statute only had allowed for modification on the ground of a change in conditions; however, it was modified in 1934 "expressly to broaden the grounds on which a deputy commissioner can modify an award . . . when changed conditions or a mistake in a determination of fact makes such modification desirable in order to render justice under the act." Id. at 255 (internal quotation marks and citations

omitted). According to the Court, "[t]he plain import of this amendment was to vest a deputy commissioner with broad discretion to correct mistakes of fact, whether demonstrated by wholly new evidence, cumulative evidence, or merely further reflection on the evidence initially submitted." Id. at 256. Consequently, after O'Keeffe, not only could modification be used to challenge the ultimate determination of liability, see Banks, 390 U.S. at 465, but modification also could take place without submission of "new" evidence.

Finally, in Metropolitan Stevedore Co. v. Rambo, 515 U.S. 291, 296 (1995), the Supreme Court viewed the "change of conditions" language in sec. 22 with the same breadth as it had "a mistake in a determination of fact." In that case, a claimant initially had been awarded benefits. He then underwent re-training, and his earnings increased to a level beyond that which he had earned prior to his debilitating injury. The employer, therefore, moved to modify the award based on a change in conditions. The Supreme Court agreed that the change in earning capacity qualified as a change in conditions under the Act. The Court stated: "The use of 'conditions,' a word in the plural, suggests that Congress did not intend to limit the bases for modifying awards to a single condition, such as an employee's physical health." Id. at 296. Consequently, the Court held that "a change in conditions" was broad enough to encompass a change in earning capacity.

Not only have the substantive criteria for modification been interpreted broadly, the time line for requestingmodification also is generous. Section 22 allows for a modification petition to be filed at any time within a year of a claim's rejection; the statute contains no limit on the number of modification petitions a party may file. See 33 U.S.C. sec. 922. Furthermore, courts have interpreted "rejection of a claim" to include rejection of a modification petition, thus allowing successive modification petitions as long as they meet the one-year requirement. See Betty B Coal Co. v. Director, OWCP, 194 F.3d 491, 500 (4th Cir. 1999);/5 see also Keating v. OWCP, 71 F.3d 1118, 1120 (3d Cir. 1995) (rejecting ALJ's

characterization of complainant's multiple filings as forum shopping). Indeed, one circuit has concluded that "the 'principle of finality' just does not apply to Longshore Act and black lung claims as it does in ordinary lawsuits." R.J. Jessee v. Director, OWCP, 5 F.3d 723, 725 (4th Cir. 1993). Moreover, the Third Circuit has noted that "[t]he fact that [a party] did not specifically plead a mistake of fact or change in conditions in his second claim is irrelevant" because

[n]either sec. 22 of the Longshore Act nor 20 C.F.R. sec. 725.310[/6] requires a claimant to plead such a ground. Once a request for modification is filed, no matter the grounds stated, if any, the deputy commissioner has the authority, if not the duty, to reconsider all the evidence for any mistake of fact or change in conditions.
Consolidated Coal Co. v. Worrell, 27 F.3d 227, 230 (3d Cir. 1994).

In light of the language, structure and case law interpreting sec. 22, the DOL sees sec. 22 as articulating a preference for accuracy over finality in the substantive award. According to the DOL, when the modification request is timely filed, the interest in accuracy trumps the interest in finality. See DOL Br. at 21. "Because the black lung regulations are issued by the Office of Workers' Compensation rather than by the Benefits Review Board, it is to the former body rather than the latter tha[t] we owe the usual deference that courts give agencies' interpretations of their own regulations or governing statutes." Sahara Coal Co., 946 F.2d 554.

We believe that the DOL's approach is a reasonable interpretation of the statutory and regulatory language and finds support in the Supreme Court cases, as well as a wealth of circuit cases, interpreting sec. 22. In Banks, for example, the Supreme Court allowed modification despite the fact that the evidence in support of the petition could have been discovered prior to the hearing. Furthermore, in O'Keeffe, the Supreme Court explicitly rejected efforts to limit modification to situations in which new evidence was produced in support of the petition; the Supreme Court stated that "[t]he plain import of

[the 1934 Amendment] was to vest a deputy commissioner with broad discretion to correct mistakes of fact, whether demonstrated by wholly new evidence, cumulative evidence, or merely further reflection on the evidence initially submitted." O'Keeffe, 404 U.S. at 256. Indeed, "[o]nce a request for modification is filed, no matter the grounds stated, if any, the deputy commissioner has the authority, if not the duty, to reconsider all the evidence for any mistake of fact or change in conditions." Worrell, 27 F.3d at 230. Given the preference for accuracy articulated in these and other cases,/7 we cannot but conclude that the DOL's position, although perhaps stated too tersely and therefore subject to misinterpretation, is not only reasonable, but persuasive./8

Mrs. Hilliard, however, points to a number of circuit and BRB cases which have rejected efforts to correct mistakes of fact in favor of promoting finality of judicial decisionmaking. Specifically, Mrs. Hilliard suggests that McCord v. Cephas, 532 F.2d 1377 (D.C. Cir. 1976), Verderane v. Jacksonville Shipyards Inc./ Aetna Casualty & Surety Co., 772 F.2d 775 (11th Cir. 1985), General Dynamics Corp. v. Director, 673 F.2d 23 (1st Cir. 1982), and Kinlaw v. Stevens Shipping & Terminal Co., 33 BRBS 68 (May 17, 1999), strike the appropriate balance between accuracy and finality such that "justice under the Act" is achieved. We examine these cases briefly.

In McCord, Mrs. Cephas filed a claim for benefits after an allegedly work-related injury caused her husband's death. The named employer refused to participate in any discovery or hearings; its only response was "John Cephas has never been in our employment." McCord, 532 F.2d at 1378 (internal quotation marks omitted). After a hearing in which the employer did not participate, the DOL sent a copy of the award of benefits to the employer; the employer did not respond or appeal within thirty days. After obtaining counsel, the employer filed for a modification. The ALJ fined the employer for flouting the process, but reopened the case and revoked the benefits because McCord never had employed Cephas. The BRB vacated the ALJ's decision on the ground that the ALJ had no jurisdiction to grant

the employer's request for modification in the circumstances presented. The District of Columbia Circuit disagreed. Relying on O'Keeffe, the court noted that the Supreme Court had adopted a "broad and remedial interpretation of [sec. 922]." Id. at 1379. Furthermore, continued the court, "there is nothing in the Court's language or the legislative history to suggest that the ambit of sec. 22 is narrower for employers . . . ." Id. at 1380. The court, however, then made a distinction between having the power to reopen and automatically reopening whenever the ALJ found that there had been a mistake in a determination of fact. It stated: "The congressional purpose in passing the law would be thwarted by any lightly considered reopening at the behest of an employer who, right or wrong, could have presented his side of the case at the first hearing and who, if right, could have thereby saved all parties a considerable amount of expense and protracted litigation." Id. at 1381. The Court of Appeals minced no words in describing the employer's conduct:

It is not necessary to go as far as the Lykes decision in order to conclude that reopening in the case of Cephas would not "render justice under the act." It would be difficult to describe a history of greater recalcitrance, of greater callousness towards the processes of justice, and of greater self-serving ignorance, than the attitude displayed by McCord in the four-plus years from the time of Cephas' death on January 1, 1969, to January 31, 1973, when McCord, after receiving notice of the Deputy Commissioner's adverse award, first began to assert his defenses.

McCord, 532 F.2d at 1381.

In McCord, therefore, the court suggested that an employer's abuse of the adjudicatory system could justify the ALJ opting not to exercise his or her discretion in favor of modification. It remanded the case to the BRB for a determination as to whether reopening would "render justice under the act."

Mrs. Hilliard also maintains that General Dynamics Corp. v. Director, 673 F.2d 23 (1st Cir. 1982), supports the ALJ's determination in this case. In

General Dynamics, the employer filed a modification petition requesting that the director revisit the liability decision in light of evidence that the disability was caused at least in part by a prior partial disability, thereby limiting the later employer's liability under sec. 8(f) of the Act./9 The First Circuit held that reopen-ing under these circumstances was not warranted. It stated that "[a] bare claim of need to reopen to serve the interests of justice, however, is not enough. In deciding whether to reopen a case under sec. 22, a court must balance the need to render justice against the need for finality in decision making: The basic criterion is whether reopening will render justice under the act." Id. at 25 (internal quotation marks and citations omitted). The court went on to determine that, although it was "not insensitive to the employer's claim that reopening here might be said to be in the interests of justice," "[n]evertheless, we hold that such a reopening would not serve the orderly administration of justice which depends in no small part upon finality of judicial determinations." Id. at 26. The First Circuit, while articulating the District of Columbia Circuit's approach, did not follow its rationale. The concern in McCord had been the possibility that the employer's behavior amounted to gaming the system, and the court had found nothing in the statute or in the governing Supreme Court precedent to require the Board or the court to countenance such behavior. By contrast, the court in General Dynamics transformed the permissible considerations of delay and hardship into a requirement that, even in the absence of such factors, the simple finality of judicial decisionmaking be a controlling factor.

In Verderane v. Jacksonville Shipyards Inc./ Aetna Casualty & Surety Co., 772 F.2d 775 (11th Cir. 1985), the Eleventh Circuit reached a result similar to the one in General Dynamics. There an employer had not realized that it could raise the issue of sec. 8(f) relief in the same hearing that a claimant's disability was disputed and determined. The Eleventh Circuit stated that "Section 22 petitions are designed to prevent injustice resulting from the erroneous fact-finding of officials such as an ALJ, not to save litigants from the

consequences of their counsel's mistakes." Id. at 779. Consequently, the court refused to reverse an ALJ's decision not to grant rehearing.

Finally, in Kinlaw v. Stevens Shipping and Terminal Co., 33 BRBS 68 (May 17, 1999), an employer moved for modification of an award on the basis that one of the testifying experts for the plaintiff had not understood the nature of the employee's job. After the adverse determination, the employer submitted a number of questions to the physician seeking to clarify his testimony. The physician responded to the questions, and the employer submitted the materials in support of the petition for modification. The ALJ refused to modify the award on the ground that the evidence in support of modification could have been developed at the first hearing. Noting explicitly its disagreement with the DOL, the BRB affirmed. It stated that there was "no reversible error in the administrative law judge's determination that employer should have anticipated the need to develop Dr. Forrest's opinion more fully at the time of the initial proceeding." Id. at 74. It then concluded that

[a]s employer's only explanation for not developing this testimony previously is its erroneous belief that it did not think that it was necessary, and Section 22 is not intended to provide a back-door route to retrying a case, or to protect litigants from their counsel's litigation mistakes, we affirm the administrative law judges' denial of modification on the facts presented as it constitutes a rational exercise of her discretionary authority.

Id. at 74-75. According to this BRB decision, failing to develop an argument that could have been made earlier is a consideration deserving of great weight in the reopening determination and can justify denying a petition to reopen.

We believe that the holding of the District of Columbia Circuit in McCord is compatible with the statutory command of Congress and with the controlling holdings of the Supreme Court of the United States. The court's concern, and the controlling rationale for its holding, was the possibility that the employer blatantly had disregarded the administrative process at a significant

cost to the system of adjudication. As we have noted earlier, the court wrote that

[i]t would be difficult to describe a history of greater recalcitrance, of greater callousness towards the processes of justice, and of greater self-serving ignorance, than the attitude displayed by McCord in the four-plus years from the time of Cephas' death on January 1, 1969, to January 31, 1973, when McCord after receiving notice of the Deputy Commissioner's adverse award, first began to assert his defenses.
McCord, 532 F.2d at 1381.

On the other hand, although both General Dynamics and Verderane could be "understood to stand for the proposition that a particular affirmative defense was not raised--and thus not relied upon--in the initial proceeding, then there is no mistake to correct," DOL Br. at 16, language in these cases that emphasizes finality interests cannot easily be squared with the language of the statute, the holdings of the Supreme Court, or the holdings of other circuits that have emphasized the preference for accuracy over finality in sec. 22 adjudications. See, e.g., R.J. Jessee, 5 F.3d at 725; see also supra note 7. For instance, in Verderane the Eleventh Circuit held that because the employer was aware of facts that supported its proposed defense at the time of the original hearing, the employer was precluded from raising the issue through reopening. See Verderane, 772 F.2d at 779 ("Petitioner knew of the facts that supported section 8(f) relief at the time of the 1975 hearing before ALJ Kimball, and thus should have raised the issue at that time." (footnote omitted)). However, the Supreme Court in O'Keeffe was explicit that "new" evidence was not a prerequisite for reopening: "There is no limitation to particular factual errors, or to cases involving new evidence or changed circumstances." O'Keeffe, 404 U.S. at 255. As well, in General Dynamics the court rested its decision in part on the "policy of finality" and its concern for "already overburdened courts." General Dynamics, 673 F.2d at 26. Yet, the Supreme Court rejected such an argument in Rambo and noted that such concerns are "better directed at Congress or the Director in her rulemaking capacity." Rambo, 515 U.S. at 300.

In O'Keeffe, the Supreme Court noted that "justice under the Act" should be considered in reopening decisions. The Court's use of "under the Act" requires that an ALJ's administration of "justice" be grounded in the stated purpose of the Act: "to ensure that in the future adequate benefits are provided to coal miners and their dependents in the event of their death or total disability due to pneumoconiosis." 30 U.S.C. sec. 901(a). Congress accomplished this goal, in part, by incorporating within the statute a broad reopening provision to ensure the accurate distribution of benefits. The reopening provision is not limiting as to party--it is available to employers and miners alike. See King v. Jerichol Mining, Inc., 246 F.3d 822, 825 (6th Cir. 2001) ("It is apparent to us that, by its plain language, 33 U.S.C. sec. 922, is a broad reopening provision that is available to employers and employees alike."); McCord, 532 F.2d at 1380 ("Although Banks and O'Keeffe dealt only with reopening under sec. 22 for the benefit of claimants, there is nothing in the Court's language or the legislative history to suggest that the ambit of sec. 22 is narrower for employers seeking to 'decrease' or 'terminate' a prior award."). Furthermore, neither the statute nor its interpreting case law limits the type of evidence that may justify reopening; an ALJ may reopen "to correct mistakes of fact whether demonstrated by wholly new evidence, cumulative evidence, or merely further reflection on the evidence initially submitted." O'Keeffe, 404 U.S. at 256. Consequently, whether requested by a miner or an employer, a modification request cannot be denied out of hand based solely on the number of times modification has been requested or on the basis that the evidence may have been available at an earlier stage in the proceeding.

The ALJ, however, followed precisely this course. It is clear from the decision that the ALJ was influenced greatly by the fact that at least some of Old Ben's evidentiary submissions could have been produced for the first hearing. According to ALJ Chapman, allowing reopening in these circumstances "would make mincemeat of any principles of finality" and would "constitute[ ]

piecemeal litigation and forum shopping at its worst." App. at 35. However, finality simply is not a paramount concern of the Act. Because the ALJ gave no credence to the statute's preference for accuracy over finality, we must remand for application of the proper legal standard.

The DOL urges us to take the next step and define, with precision, the considerations that "trump" the statutory preference for accuracy. According to the DOL, the inquiry of "justice under the Act" should focus on a party's actions and intent in seeking modification. A party, states the DOL, should not be "punished" through a denial of modification simply because it employs the procedural mechanisms instituted by Congress. However, if the party's purpose in filing a modification is to thwart a claimant's good faith claim or an employer's good faith defense, the remedial purpose of the statute is no longer served. This position embraces the approach of the District of Columbia Circuit in McCord. There, the court acknowledged the error of the ALJ's decision, but determined that modification should not be "automatic." McCord, 532 F.2d at 1380. It allowed the BRB on remand to evaluate the "recalcitrance" and "callousness" of the named employer in rendering the modification decision.

Certainly the types of actions engaged in by the employer in McCord would justify an ALJ's refusal to reopen. However, we do not believe that only sanctionable conduct constitutes the universe of actions that overcomes the preference for accuracy. For example, just as the remedial purpose of the Act would be thwarted if an ALJ were required to brook sanctionable conduct, the purpose also would be thwarted if an ALJ were required to reopen proceedings if it were clear from the moving party's submissions that reopening could not alter the substantive award. So too, an ALJ would be entitled to determine that an employer was employing the reopening mechanism in an unreasonable effort to delay payment. The ALJ is in a unique position to assess the motivations of the party, the merits of the motion as well as institutional concerns. We do not think it wise or consonant with the grant

of discretion in the statute, therefore, to unnecessarily cabin the ALJ's ability to address the complexities of a motion to reopen. To the extent that an ALJ determines that there are important reasons grounded in the language and policy of the Act that overcome the preference for accuracy, that determination should not be disturbed.

In making that determination, the ALJ will no doubt need to take into consideration many factors including the diligence of the parties, the number of times that the party has sought reopening, and the quality of the new evidence which the party wishes to submit. These and other factors deemed relevant by the ALJ in a particular case ought to be weighed not under an amorphous "interest of justice" standard, but under the frequently articulated "justice under the Act" standard, O'Keeffe, 404 U.S. at 255. This distinction is not simply one of semantics. The latter formulation cabins the discretion of the ALJ to keep in mind the basic determination of Congress that accuracy of determination is to be given great weight in all determinations under the Act.

At this point, we are constrained to point out that we cannot accept our dissenting colleague's characterization of our holding today. Indeed, we believe that very little separates our views. It is important to note that we do not require that the ALJ give no weight to the concern of finality of decision. Nor do we preclude the possibility that, in a given case, it might be quite appropriate to permit this consideration to prevail in the adjudication of a case. We simply hold that, given the unique command of this statute, a modification request cannot be denied solely because it contains argument or evidence that could have been presented at an earlier stage in the proceedings; such a concern for finality simply cannot be given the same weight that it would be given in a regular civil proceeding in a federal district court. As our colleague quite correctly notes, the court in Sahara Coal Co. v. Office of Workers' Compensation Programs, 946 F. 2d 554 (7th Cir. 1991), referred to Federal Rule of Civil Procedure 60(b) as a "counterpart" to the modification statute. Indeed, there can

be no argument that each provision governs the reopening of already rendered judgments. However, as our colleague also notes, the court refrained from suggesting that the standard for the application of these two "counterparts" was the same. Indeed, what seems to divide our dissenting colleague from us in this case is the insistence that Rule 60(b) standards, or something very akin to those standards, ought to govern in the present case. By contrast, we believe that, in determining whether to reopen a black lung case, the specific policy choices made by Congress must be applied.

Because the ALJ did not ground her decision to reopen in the language and policies of the Act, we must remand this case for further consideration. We express no opinion with respect to the outcome. Given the lengthy history of litigation in the case, we trust that the ALJ and the BRB will expedite their review.

C.  Discovery Requests

Old Ben also maintains that the ALJ abused her discretion in denying its motion to compel Mrs. Hilliard to sign an authorization allowing it to view the autopsy slides. The ALJ determined that "Mrs. Hilliard [was] under no duty to 'cooperate' with the Employer in its attempt to have the award of benefits reversed." App. at 14. The DOL, however, perceives a continuing duty on the part of the miner to "authorize access to his or her medical records." DOL Br. at 23. We are persuaded by the DOL's position.

The regulations implementing the Act are not silent with respect to a miner's obligation to cooperate under these circumstances. Looking first to the regulation governing modification proceedings, 20 C.F.R. sec. 725.310(b) (2001) provides that "[m]odification proceedings shall be conducted in accordance with the provisions of this part as appropriate . . . ." Included within Part 725 is sec. 725.414 which states in relevant part that "[i]f a miner unreasonably refuses . . . [t]o provide the Office or the designated responsible operator with a complete statement of his or her medical history and/or to authorize access to his or her medical records . . . the miner's claim

may be denied by reason of abandonment." 20 C.F.R. sec. 725.414(a)(3)(i) (2001)./10 According to the regulations, therefore, the requirements of sec. 725.414 apply to modification proceedings.

In her analysis, the ALJ rejected Old Ben's request for authorization without considering the reasonableness of Mrs. Hilliard's refusal. We cannot say, as a matter of law, that the refusal was reasonable, although the ALJ might reach this conclusion after a more searching inquiry. Consequently, we must remand for a determination of whether Mrs. Hilliard's refusal was reasonable under the circumstances./11

Conclusion

For the foregoing reasons, the petition for review of the BRB is granted, the decision of the BRB is reversed, and this case is remanded for further proceedings consistent with this opinion.
PETITION FOR REVIEW GRANTED;
REVERSED AND REMANDED

DIANE P. WOOD, Circuit Judge, dissenting. This case requires us to reconcile two important principles of administrative law, as they apply to determinations made under the Black Lung Benefits Act, 30 U.S.C. sec.sec. 901 et seq. The first of those principles relates to the legal rules that govern the proceeding, and the extent to which we are bound by the interpretation the agency in question has given to the statutes that govern it. The second relates to the litigation process itself, and the extent to which an appellate court ought to defer to a primary adjudicator's particularized applications of legal rules to the case before her. With respect, I do not agree with the way my colleagues have applied either of these principles to the case before us. I would affirm the decision of the Benefits Review Board confirming the award of black lung benefits to the estate of James Hilliard.

I

In spite of the majority's careful review of the background of the litigation, I find it necessary to begin

with some additional observations. Old Ben concedes in its reply brief that the DOL has paid to Mrs. Hilliard (solely in her capacity as the representative of Mr. Hilliard's estate--she submitted no claim for benefits in her own right) all benefits awarded to Mr. Hilliard. Because this court recognized that there was a serious question whether the estate, or Mrs. Hilliard, still has any stake at all in this litigation, we asked the parties to file additional memoranda on that issue. Mr. Hilliard died on February 23, 1995, which meant that his last payment month was February 1995. Old Ben did not file the petition for modification now before us until June 26, 1997. The supplemental briefs make it clear that the chances that anyone could recover the payments that the Hilliard Estate received are remote at best. That means that the real adversaries here are Old Ben and the DOL, one of which will be left holding the bag if the payments are indeed unrecoverable. Perhaps, at that future time, there will be an adversary proceeding between them, as they fight over which one has to bear the expense of unrecoverable payments. If the ALJ was correct, then the DOL may seek reimbursement from Old Ben; if she was wrong, then the DOL must absorb the loss. But right now, the DOL is before this court arguing in support of Old Ben's position that the ALJ misinterpreted the statutory scheme. This sounds suspiciously like a request for an advisory opinion, under the circumstances, since a "victory" will actually risk harm to the agency in a monetary sense.

Noting these facts, Mrs. Hilliard began her argument on appeal with the assertion that this court lacks jurisdiction to hear the case. While she based this principally on the argument that Old Ben filed its third modification petition too late, the fact remains that she called to our attention a possible jurisdictional problem (which we would have had a duty to notice even if she had said nothing, Fry v. UAL Corp., 84 F.3d 936, 939 (7th Cir. 1996)). On the limited question of the timeliness of Old Ben's petition, I do not disagree with the majority's analysis; I accept that Old Ben filed a timely petition. The real problem is whether we have had the benefit of a truly adversary presentation on the issue

the majority has decided.

On the one hand, Mrs. Hilliard has throughout these proceedings defended the ALJ's decision. On the other hand, in her supplemental memorandum she maintained that she has nothing whatsoever at stake in the case; any injury would be purely hypothetical because under Illinois law, the government may no longer recover from the estate. 755 ILCS 5/18-12(b) (all claims against an estate are barred two years after the decedent's death; Mr. Hilliard died on February 3, 1995, and neither Old Ben nor DOL had filed a claim for these benefits by February 3, 1997, or at any later time). The majority tries to avoid this problem by pointing out that even if Mrs. Hilliard (as the representative of Mr. Hilliard) no longer has an interest in this litigation, the DOL and Old Ben are adverse parties because they disagree over who should ultimately bear the burden of the payments Mr. Hilliard received. That disagreement, however, is hypothetical as far as the present appeal is concerned; for reasons best known to themselves, they are arguing together here. This court may not issue such advisory opinions merely to clarify the law.

Nevertheless, Mrs. Hilliard still maintains at least a theoretical interest in this dispute. It appears, for example, that Illinois law may not bar the federal government from making this claim against someone, even though Mr. Hilliard is dead and no estate was ever formally opened for him. See United States v. Summerlin, 310 U.S. 414, 417 (1940). The parties all seem to believe that federal law permits DOL to seek repayment, citing 30 U.S.C. sec.sec. 923(b) & 940 (incorporating 42 U.S.C. sec. 404). Practicalities are another matter: Mrs. Hilliard is nearly 72 years old and her ability to repay is not a matter of record. Nevertheless, however remote the possibility or the likelihood of success, the DOL may still try to collect from Mrs. Hilliard. Although it retains the discretion to grant a waiver, it has not indicated it would do so. That is enough--barely--to save the case from nonjusticiability, and so I agree with the majority that we may address the substantive question presented: whether accuracy concerns (almost) always trump finality concerns for purposes of sec. 422(a) of the Black

Lung Benefits Act, 30 U.S.C. sec. 932(a), which incorporates sec. 22 of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. sec. 922. See also 20 C.F.R. sec. 725.310.

II

The relevant law on that substantive issue can be found in the special set of rules governing modification petitions in this particular area. Like the majority, I begin with the language of sec. 22, which the majority reproduces ante at 8-9. Under sec. 22, the deputy commissioner "may" "review a compensation case . . . and . . . issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation [i.e., the result of an earlier order], or award compensation." It is clear, as the majority emphasizes, that the existence of this statute, coupled with the Supreme Court cases interpreting it, results in a system that does not follow traditional principles of res judicata. See Banks v. Chicago Grain Trimmers Ass'n, 390 U.S. 459 (1968); O'Keeffe v. Aerojet-General Shipyards, Inc., 404 U.S. 254 (1972); Metropolitan Stevedore Co. v. Rambo, 515 U.S. 291 (1995). Where we part company is on the question of the way finality concerns do fit into the black lung (and longshore) system. Even the majority agrees that finality is not utterly irrelevant. If that was what Congress wanted, it would have said that the deputy commissioner "must" reopen a case upon a properly filed modification petition. Plainly, that is not what the statute says. Using the language of discretion, it says that the deputy commissioner "may" reopen the case. The majority has read into the statute, however, substantive qualifications on when reopening under this seemingly discretionary language may occur: it has judicially decreed that it will be an abuse of discretion for the deputy commissioner to refuse to reopen and reconsider a matter de novo in every case except those in which either a modification could not alter the award or a party has intentionally misused the modification mechanism for the purpose of delaying the adjudication or otherwise abusing the administrative process.

That standard appears nowhere in the statute, nor can one find it in any

regularly promulgated regulations issued by the DOL. Instead, it seems to be a litigating position that the DOL has crafted for the occasional case, in an effort to reconcile the court of appeals' decisions in McCord v. Cephas, 532 F.2d 1377 (D.C. Cir. 1976); Verderane v. Jacksonville Shipyards, Inc., 772 F.2d 775 (11th Cir. 1985); and General Dynamics Corp. v. Director, OWCP, 673 F.2d 23 (1st Cir. 1982). The majority points to Kinlaw v. Stevens Shipping & Terminal Co., 33 BRBS 68 (May 17, 1999) to show that the DOL has argued this position before, but a few arguments in appellate briefs in no way equate to official agency policy warranting deference. Indeed, the majority admits that this is not a situation in which this court owes deference to the agency's position under the principles announced in Chevron USA, Inc. v. Natural Resources Defense Council, 467 U.S. 837 (1984). See also Wyoming Fuel Co. v. Director, OWCP, 90 F.3d 1502, 1505 (10th Cir. 1996). It also acknowledges, in footnote 8, that the Supreme Court's decision in United States v. Mead Corp., 121 S. Ct. 2164 (2001), changed the rules governing deference. Under Mead, we have been instructed to return to the regime established by Skidmore v. Swift & Co., 323 U.S. 134 (1944), under which a rule or agency position is entitled to claim respect only "according to its persuasiveness." 121 S. Ct. at 2168. In that respect, Mead went considerably beyond the Court's earlier decision in Christensen v. Harris County, 529 U.S. 576 (2000), which had only hinted at the rule that should apply to less formal interpretations found in policy statements, manuals, and the like.

Acceding to that rule, the majority announces that it finds the approach the DOL has outlined in its brief here to be a "reasonable interpretation of the statutory and regulatory language" and one that is supported by a "wealth" ofSupreme Court and court of appeals decisions. Ante at 13. I cannot agree, because I find that the authorities on which the majority relies did not focus on the question of when finality concerns should prevail (or to put it differently what justifies an exception to the interest in accuracy), nor did they attempt to reconcile an unwavering preference for accuracy with the

discretionary language of the statute. That fact, coupled with the way the DOL's Benefits Review Board (as opposed to its lawyers) has actually administered this statute, leads me to conclude that this is not a situation in which we must defer to the DOL's position. On the merits, I am persuaded that the rule that best reflects the statutory language and policy requires affirmance of the BRB's decision here.

   To reiterate, the central question before us is not whether sec. 22 is somehow qualified by a strict rule of res judicata. It is not, as the Supreme Court has plainly held in Banks v. Chicago Grain Trimmers Ass'n, 390 U.S. 459 (1968), O'Keeffe v. Aerojet General Shipyards, Inc., 404 U.S. 254 (1972), and Metropolitan Stevedore Co. v. Rambo, 515 U.S. 291 (1995). The question is instead one about the standard the DOL must use in drawing the balance between accuracy (which at the extreme would call for reopening any time someone had new evidence or arguments) and finality (which at the extreme would forbid modification for any reason whatsoever). The majority has accepted the DOL's argument for a standard under which accuracy trumps in every case (that is, every case is reopened upon a modification petition) unless the party seeking modification has intentionally abused the process. The alternative standard, which I find to be far better supported by the Supreme Court's decisions, would call for a more flexible "interest of justice" determination to be made by the deputy commissioner (or other responsible official at the Department). The "interest of justice" standard would certainly permit consideration of intentional misuse, but it would also allow the responsible official to take into account factors such as the diligence of the party seeking modification, the number of times modification has been sought, and the quality of the new evidence or new arguments the party seeking modification wishes to present. A reviewing court would then decide whether a decision to reconsider, or a decision not to reconsider, an earlier award represented an abuse of discretion under familiar principles of administrative law. See, e.g., 5 U.S.C. sec. 706(2)(A).

In Banks, the Supreme Court observed that the purpose of the amendment to sec. 22 that opened up mistaken determinations of fact to later review was "to broaden the grounds on which a deputy commissioner can modify an award by allowing modification where a mistake in a determination of fact makes such modification desirable in order to render justice under the act." 390 U.S. at 464 (internal quotations omitted). The agency must therefore have some reason to believe that it would serve the interests of justice to reopen a proceeding that has been concluded and to reconsider the earlier result. See Verderane, supra; General Dynamics, supra. One such reason might certainly be the showing of intentional misuse of the modification mechanism that the majority has accepted. But it is not the only one. Finality itself is another factor that deserves some consideration on its own, as the administrative law judge here held. It is hard at best to make the case that finality has nothing to do with the interests of justice. After all, finality protects settled interests; it brings an enforced end to disputes between adversaries; it saves resources; and it reflects the pragmatic idea that the odds of improving the accuracy of decision-making by adding an additional phase of proceedings are probably not high in the majority of cases. These policies underlie the law of judgments and the procedural rules such as Fed. R. Civ. P. 60(b), which place heavy emphasis on finality interests. (Indeed, in Sahara Coal Co. v. Office of Workers' Compensation Programs, 946 F.2d 554 (7th Cir. 1991), this court commented that the modification provision of 20 C.F.R. sec. 725.310 now before us is the "counterpart to Rule 60(b)." Id. at 556. The Sahara Coal decision had no occasion to explore how close a counterpart it was, but the analogy would suggest that finality is not the disfavored notion the majority has made it.)

Diligence is another legitimate consideration for the agency to take into account in deciding whether or not to modify an earlier decision. That is precisely the point the ALJ here was making when she weighed against Old Ben the fact that the evidence it wanted to present would have been available to a diligent party in time for the earlier

two rounds of this case:

The modification provisions of the Act are not intended to allow a party to lay back, and, having received an adverse decision, take a second (or in this case, third) bite at the apple by gearing up and presenting evidence that it could have presented at the first hearing on the claim. To do so would allow the Employer, under the guise of an allegation of mistake, to retry its case simply because it feels that it can make a better showing the next time around.

App. 35. This ALJ was not the first person at the DOL to take diligence into account. To the contrary, the BRB has refused modification requests before on this precise ground. In Kinlaw v. Stevens Shipping Co., supra, the BRB affirmed the ALJ's refusal to modify. The ALJ had relied on the fact that the employer could and should have obtained and proffered during the original hearing the medical opinions it was offering in support of its modification request. The BRB agreed, stating that

to allow employer to reopen the prior decision on the basis of what equates to post-decisional discovery would have the adverse effect of allowing any employer reluctant to finance adequate discovery pre-trial to count on correcting any omissions by way of a petition for modification, which would defeat both the principles of finality and that [sic] of judicial efficiency.

The party's overall diligence, as well as the public values embodied in finality and efficiency, are all legitimate dimensions of the "justice under the Act" that should guide a decision under sec. 22. See also L.C. Branham v. Bethenergy Mines, Inc., 1998 WL 169698 (DOL BRB 1998).

Naturally, there have been other cases in which the BRB has permitted modification even without a demonstration that new evidence is available. This is what one would expect in a system that permits, but does not compel, modification. The Supreme Court underscored the fact that the ALJ has the discretion under sec. 22 to modify an award to correct mistakes of fact, whether those mistakes were demonstrated

by wholly new evidence or nothing more than further reflection on the evidence already submitted. O'Keeffe, 404 U.S. at 256. See also Consolidation Coal Co. v. Worrell, 27 F.3d 227, 230 (6th Cir. 1994) ("If the claimant merely alleges that the ultimate fact (disability due to pneumoconiosis) was wrongly decided, the deputy commissioner may, if he chooses, accept this contention and modify the final order accordingly."); Jessee v. Director, OWCP, 5 F.3d 723, 725 (4th Cir. 1993) ("There is no need for a smoking-gun factual error, changed conditions, or startling new evidence."). The ALJ in this case was aware that there was no hard-and-fast rule requiring new evidence; she began her opinion with the same statement just referenced from O'Keeffe and acknowledged that all evidence of record is relevant on a modification petition and that the fact-finder enjoys broad discretion even if nothing more occurs than further reflection on the existing record. App. 33. Thus, I am satisfied that her decision was not tainted by a misapprehension of the standards that apply in these cases.

Based on the more flexible "interests of justice" standard I have described, I would find that the ALJ and the BRB did not abuse their discretion in refusing to modify the Hilliard award. This was the third time around for Old Ben, in a modification proceeding that began more than two years after the miner's death. The evidence Old Ben wished to present was not new. (Indeed, Old Ben seems to have been rather careless during an earlier modification proceeding, when it submitted chest x-rays of a completely unrelated person to support its arguments.) It attempted to excuse its earlier failure to consider the autopsy report that had been prepared for Mr. Hilliard--which had listed pneumoconiosis as the cause of his death--on the ground that it had been abandoned by its then-lawyer, Wayne Reynolds. The ALJ was not persuaded that this adequately explained Old Ben's actions, noting that Old Ben had not explained with particularity what the problem with counsel had been. Moreover, Old Ben certainly knew when Mr. Hilliard had died, and it had made no effort to obtain the autopsy (or, apparently, to monitor Reynolds's efforts). These are discretionary calls,

in my view. I see no abuse of discretion in the ALJ's weighing of the entire situation, though it is quite possible that no abuse of discretion would have existed had the ALJ come out the other way.

Finally, there is the question whether the ALJ abused her discretion in refusing to require Mrs. Hilliard to grant Old Ben access to the autopsy slides. It appears that Old Ben received a copy of the autopsy report itself in January 1996. Three years later, in January 1999, it moved to obtain access to the tissue slides so that its own experts could examine them. This is the request that the ALJ denied. The DOL has suggested that this was an abuse of discretion, relying on 20 C.F.R. sec. 725.414, which says that "[i]f a miner unreasonably refuses . . . to provide . . . the designated responsible operator with a complete statement of his or her medical history and/or authorize access to his or her medical records, . . . the miner's claim may be denied by reason of abandonment." It is not clear, however, whether Mrs. Hilliard violated that regulation. She readily gave them the report itself, which is what would have constituted the official medical record. It was the underlying evidence that she did not release, and it does not appear that this regulation covers material like slides. More importantly, however, neither Mrs. Hilliard nor the ALJ relied on the autopsy evidence at all--not on the report, and not on the slides-- and so I would find that any error the ALJ might have made was harmless. Finally, even if there were some kind of legal requirement to turn over the slides, I would find that such a requirement was subject to reasonable case management rulings, and I would find that the ALJ did not abuse her discretion in concluding that Old Ben waited too long to ask for them. If Old Ben had been so interested in the slides, it could have sought them back in 1996 when it discovered that the report came to a conclusion adverse to its position.

III

Old Ben and the DOL raise the specter of a world in which employers can never win modifications, should the ALJ's decision here be upheld. With all due respect,

there is a Chicken Little-like quality to that argument. There is no reason to believe that an interpretation of sec. 22 that adopts an "interest of justice" rule to govern exercises of discretion would lead to such a result. To the contrary, this standard ought to operate in favor of employers just as often as it does for employees. Employers with a good reason to modify an award will be able to do so, and they will be able to prevent employees from constantly returning trying to increase benefits or otherwise seek a more favorable outcome unless the employee has an equally good reason. An ALJ has the discretion to grant or deny a modification request raised by either party, and nothing in the system, as I believe it should be interpreted, would bias the proceedings toward either side. On the other hand, I fear that the encouragement to piecemeal litigation that is inescapable in the majority's standard will encourage employers to come back once a year to try to deprive employees of their awards. As between the employer and the employee, it is the employer who is likely to have sufficient resources for this kind of endless proceeding. In my opinion, neither the statute nor the regulations compel such a result. I therefore respectfully dissent.

FOOTNOTES

/1 Although Old Ben requested dismissal to pursue modification, it apparently failed to file a petition for modification with the DOL. The BRB therefore ordered Old Ben to start paying benefits; this action prompted Old Ben to file its petition for modification.

/2 ALJ Lawrence was no longer available to hear the case.

/3 In Director, OWCP v. Greenwich Collieries, 512 U.S. 267, 281 (1994), the Supreme Court held that the DOL's "true doubt" rule, which required an ALJ to find in favor of the claimant when the evidence was evenly balanced, violated sec. 7 of the Administrative Procedures Act.

/4 We have examined whether Mrs. Hilliard has a sufficient interest in the outcome of the litigation and whether the similar litigating positions of Old Ben and the DOL render this case nonjusticiable. The parties did not raise this issue; however, because it implicates the court's jurisdiction, we requested that the parties file supplemental briefs to address the justiciability issue. After having the benefit of the parties'

submissions, we conclude that this case presents a justiciable case or controversy. First, all parties agree that, pursuant to applicable statutes and regulations, the DOL may seek repayment from Mrs. Hilliard of the amount paid to Mr. Hilliard in the event the award is reversed on remand. See 30 U.S.C. sec.sec. 923(b) & 940 (incorporating 42 U.S.C. sec. 404); 20 C.F.R. sec.sec. 725.522 (b) & 725.540-.546. We do not believe that either the possibility of obtaining an administrative waiver (which the DOL has shown no indication that it will grant) or the possibility that the DOL may be barred by Illinois' probate law from collecting on its claim, see 755 ILCS 5/18-12(b); but see United States v. Summerlin, 310 U.S. 414, 417 (1940) ("When the United States becomes entitled to a claim acting in its governmental capacity and asserts its claim in that right, it cannot be deemed to have abdicated its governmental authority so as to become subject to a state statute putting a time limit upon enforcement."), deprives the court of jurisdiction to hear this case. Even if the continued interest of Mrs. Hilliard did not secure this court's jurisdiction, we believe there is sufficient adversity among the remaining parties--the DOL and Old Ben--to sustain jurisdiction. Although these parties agree that the ALJ applied the incorrect standard, the similarities end there: Old Ben and the DOL differ on who is ultimately responsible for the payments to Mr. Hilliard. Consequently, we believe this case presents a live case and controversy over entitlements to, and liability for, the black lung benefits paid to date. We note that our dissenting colleague reaches the same conclusion on this point.

/5 For the reasons set forth in Betty B Coal Co. v. Director, OWCP, 194 F.3d 491, 500 (4th Cir. 1999), we also must reject the contention that Old Ben's modification request was untimely. The Act provides that a modification petition may be filed "at any time prior to one year after the rejection of a claim." 33 U.S.C. sec. 922. As detailed by the Fourth Circuit in Betty B Coal, initial claims and modification requests are treated similarly in many respects. For instance, "[j]ust as in a first claim, processing of a request for modification begins with the collection of evidence at the district director level." Betty B Coal, 194 F.3d at 498. A modification petition also proceeds along the same course as an original petition--a party may request a hearing, the hearing is referred to an ALJ, and de novo review is applied. Id. Furthermore, the ALJ is in no way bound by the findings of the prior factfinder. Id. at 499. Consequently, the Fourth Circuit concluded, and we agree, that it is consistent with the Act to interpret "claim"

to include a modification request.

/6 20 C.F.R. sec. 725.310 is the regulation imple-
menting sec. 22 of the Act.

/7 See The Youghiogheny & Ohio Coal Co. v. Milliken,
200 F.3d 942, 955 (6th Cir. 1999) (rejecting, as
contrary to the holding in O'Keeffe, a coal
company's argument that modification of an award
cannot be based on a simple reweighing of the
evidence, even if this prolongs litigation);
Betty B Coal, 194 F.3d at 497 (noting that the
"modification procedure is extraordinarily broad,
especially insofar as it permits the correction
of mistaken factual findings"); Keating v. Direc-
tor, OWCP, 71 F.3d 1118, 1123 (3d Cir. 1995)
(accepting DOL's interpretation that the modifi-
cation regulation allows "an ALJ to reconsider
the evidence in determining whether there was a
mistake of fact, even the ultimate fact of enti-
tlement"); Consolidation Coal Co. v. Worrell, 27
F.3d 227, 229 (6th Cir. 1994) ("Once a request
for modification is filed, no matter the grounds
stated, if any, the deputy commissioner has the
authority, if not the duty, to reconsider all the
evidence for any mistake of fact or change in
conditions."); Amax Coal Co. v. Franklin, 957
F.2d 355, 357 (7th Cir. 1992) ("Although there
was no demonstrated change in this miner's condi-
tion, there was arguably a mistake of fact--a
mistake as to whether he had black lung disease--
and no more is required to reopen the proceeding
within a year of denial.").

/8 We have considered whether the interpretation of
the DOL is simply a litigating position that the
DOL has crafted for this case. Kinlaw v. Stevens
Shipping & Terminal Co., 33 BRBS 68 (May 17,
1999), belies any such characterization. In that
case the BRB described the position of the DOL as
follows:
[The] employer and the Director also aver that
the fact-finder has broad authority under Section
22 to reopen the claim to correct any mistaken
determinations of fact, and that the fault of the
party or the party's attorney in failing to
adduce sufficient evidence in the original pro-
ceedings cannot serve as a basis for denying
modification. The Director contends that the
administrative law judge's ascribing controlling
weight to the "interest in finality" is contrary
to the policy underlying Section 22 as a whole
and its "mistake" ground in particular; he main-
tains that as Section 22 was intended to broadly
vitiate the ordinary res judicata principles, the
interest in "getting it right," even if belated-
ly, will almost invariably outweigh the interest
in finality.

   While recognizing that the language of Section
22 is permissive, the Director maintains that

Section 22 narrowly constrains the administrative law judge's authority to deny reopening the claim where, as here, the result of the original adjudication is alleged to have been in error.
Id. at 71 (footnotes omitted).

The question then becomes what, if any, weight should be given to the DOL's position. Although in Bowen v. Georgetown University Hospital, 488 U.S. 204, 213 (1988), the Supreme Court said that "[d]eference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate," the Court later recognized a difference between an agency litigating position taken in circumstances such as Bowen, in which the agency was trying to defend an action it already had taken, and agency litigating positions taken in circumstances in which the agency had a less-vested interest in the outcome. See Auer v. Robbins, 519 U.S. 452, 462 (1997). In Auer, the Court stated:

Petitioners complain that the Secretary's interpretation comes to us in the form of a legal brief; but that does not, in the circumstances of this case make it unworthy of deference. The Secretary's position is in no sense a "post hoc rationalizatio[n]" advanced by an agency seeking to defend past agency action against attack, Bowen v. Georgetown Univ. Hospital, 488 U.S. 204, 212 (1988). There is simply no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question.
Id. at 462. Most recently, in United States v. Mead Corp., 533 U.S. 218 (2001), the Supreme Court held that "Chevron did nothing to eliminate Skidmore's holding that an agency's interpretation may merit some deference whatever its form, given the specialized experience and broader investigations and information available to the agency and given the value of uniformity in its administrative and judicial understandings of what a national law requires." Id. at 234 (internal quotation marks and citations omitted). According to Skidmore v. Swift & Co., 323 U.S. 134 (1944), "[t]he weight [accorded administrative] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements and all those factors which give it power to persuade, if lacking power to control." Id. at 140.

Although an agency's "[i]nterpretations [of statutes] such as those in opinion letters--like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law--do not warrant Chevron-style deference," Christensen v. Harris

County, 529 U.S. 576, 587 (2000), an agency's considered interpretation of its own regulation is entitled to deference "when the language of the regulation is ambiguous." Id. (citing Auer, 519 U.S. at 461). In the present case, we need not decide precisely the level of deference that should attach to the DOL's interpretation of the statute and implementing regulations; its position, we believe, is both reasonable and persuasive. Regardless of the precise standard of deference applied, therefore, we would uphold the DOL's interpretation.

/9 33 U.S.C. sec. 908(f) provides in relevant part: (1) In any case in which an employee having an existing permanent partial disability suffers an injury, the employer shall provide compensation for such disability as is found to be attributable to that injury based upon the average weekly wages of the employee at the time of the injury. If following an injury falling within the provision of subdivision (c)(1)-(2) of this section, the employee is totally and permanently disabled, and the disability is found not to be due solely to that injury, the employer shall provide compensation for the applicable prescribed period of weeks provided for in that section for the subsequent injury, or for one hundred and four weeks, whichever is the greater. . . .
33 U.S.C. sec. 908(f).

/10 A similar provision had been located at sec. 718.402, 20 C.F.R. sec. 718.402 (1999), and therefore, on its face, was not within the "provisions of this part" as set forth in sec. 725.310, 20 C.F.R. sec. 725.310 (1999). However, 20 C.F.R. sec. 725.4 (1999) incorporated the standards set forth in Part 718; it stated: "Part 718 of this subchapter, which contains the criteria and standards to be applied in determining whether a miner is or was totally disabled due to pneumoconiosis, or whether a miner died due to pneumoconiosis, shall be applicable to the determination of claims under this part." 20 C.F.R. sec. 725.4(a) (1999). Consequently, both the former and current regulations articulate the same standard for evaluating Mrs. Hilliard's refusal.

/11 In light of the disposition of this action, Mrs. Hilliard's "Motion to Take Judicial Notice" is denied as moot.